**FRED RILEY HOME BUILDING CORPORATION, et al., Plaintiffs,**

v.

**Charles COSGROVE, et al., Defendants.**

No. 93–2313–KHV.

United States District Court, D. Kansas.

Aug. 19, 1994.

Clifford A. Cohen, Buck, Bohm & Stein, P.C., Leawood, KS, Mark E. Brown, Gerald M. Kraai, Kent R. Erickson, Litman, McMahon & Brown, Kansas City, MO, Kevin D. Case, Office of the Atty. Gen., Topeka, KS, for Fred Riley Home Bldg. Corp., Bonnie's Designs, Inc.

Mark E. Brown, Kent R. Erickson, Litman, McMahon & Brown, Kansas City, MO, for Brad True Inc., Don Julian.

Charles Cosgrove, pro se.

Kurt D. Tilton, Brian L. Smith, Smith, Bellar & Tilton, P.C., Kansas City, MO, Phillip A. Miller, Phyllis G. Leach, Watson & Marshall L.C., Kansas City, MO, for Charles Cosgrove, Traditional Homes, Inc.

Michael Yakimo, Jr., D.A.N. Chase, Chase & Yakimo, Overland Park, KS, for Richard Beaman.

Joseph B. Bowman, Penny R. Slicer, Devon A. Rolf, Kokjer, Kircher, Bowman & Johnson, Kansas City, MO, for Michael Nolte.

Charles O. Thomas, Bonner Springs, KS, for Overland Cabinet Co., Inc.

David W. Hauber, Kenneth E. Holm, Boddington & Brown, Chtd., Kansas City, KS, Don M. Bradley, Michael B. Hurd, Shook, Hardy & Bacon, Kansas City, MO, for Landau Inv. Co., Inc.

David W. Hauber, Boddington & Brown, Chtd., Kansas City, KS, Don M. Bradley, Michael B. Hurd, Shook, Hardy & Bacon, Kansas City, MO, for L & N Properties, Sam Nussbaum, Glen Ladd.

### MEMORANDUM AND ORDER

NEWMAN, United States Magistrate Judge.

This copyright infringement case was scheduled for a jury trial commencing August 1, 1994. Prior to empaneling a jury, the defendants Charles Cosgrove and Traditional Homes, Inc., orally moved to dismiss the action arguing that all the copyright registrations of the plaintiffs were invalid and that plaintiffs Fred Riley Home Building Corporation and Bonnie's Designs, Inc., were precluded from proceeding herein due to various settlement agreements and due to the satisfaction of a consent judgment entered in favor of plaintiffs on Count II. The court took the defendants' motion under advisement.

A jury was then empaneled and evidence taken. Plaintiffs presented their evidence and rested. At the close of the plaintiffs' case, the defendants moved for judgment as a matter of law, renewing their arguments previously made. The court took the motion under advisement.

The defendants presented their evidence and rested. At the close of the defendants' case, defendants renewed their motions for judgment as a matter of law. The court took these motions under advisement.

Thereafter, plaintiffs requested leave to reopen their case, or in the alternative, to offer rebuttal evidence. The court overruled the plaintiffs' motion after argument, but allowed the plaintiffs to make an offer of proof. After hearing the offer of proof, the court again denied the plaintiffs' request to reopen their case. The court further found that the proffered evidence was not proper rebuttal and denied plaintiffs' request to offer this evidence in rebuttal.

After the court announced the issues to be submitted to the jury and made partial rulings on the motions for judgment as a matter of law, as stated on the record, the case was submitted to the jury on special questions. The court now formalizes its oral rulings on the motions for judgment as a matter of law and enters additional rulings on such motions. The court further enters its findings of fact and conclusions of law on plaintiffs' requests for injunctive relief.

## Applicable Law

■ To prove copyright infringement, two elements must be proven: 1) ownership of a copyright and 2) copying of constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991).

■ It is well-established, as a general rule, that copyright ownership vests in the author of the work, that is, the person who creates the work or translates it into a fixed, tangible expression is entitled to copyright protection. There is an exception related to "work made for hire." The employer of the person who prepares the work is the author and owns the copyright unless there is a written agreement to the contrary. When a work is classified as one "made for hire," it determines not only the initial ownership of the copyright, but all rights under the Copyright Act, including rights to transfer the ownership of the copyright. *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989).

■ The authors of a joint work are co-owners of the copyright in the work. 17 U.S.C. § 201(a). A joint work is defined as a work prepared by two or more authors with the intention that their contributions be merged into inseparable or independent parts of a unitary whole. 17 U.S.C. § 101. Joint authorship requires that the respective contributions of each alleged joint author must be independently copyrightable and that the alleged co-authors intend, at the time of creation of the work, to regard themselves as co-authors. *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061 (7th Cir.1994); *Childress v. Taylor*, 945 F.2d 500 (2d Cir.

1991); *Ashton–Tate Corporation v. Ross*, 916 F.2d 516 (9th Cir.1990).

■ Although a builder presents ideas and concepts to a designer who prepares the architectural plans and drawings, including sketches of concepts which become a part of the final plans and drawings, and retains approval authority thereafter, such participation is insufficient to establish a claim of co-authorship. A work is only created when it is fixed in a final work product. Ideas and concepts are not copyrightable. *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486 (11th Cir.1990).

■ In order to be considered a derivative work under 17 U.S.C. § 103 the work must be recast, transformed or adapted from a pre-existing work. 17 U.S.C. § 101. To be copyrightable as a derivative work, it must be substantially different from the pre-existing work. The original aspects of the derivative work must be more than trivial. *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486 (2d Cir.1976). The work must not consist of actual copying and must include more than mechanical copying. Fundamentally, the work must be the original product of the claimant. *Batlin, id.; Durham Industries v. Tomy Corporation*, 630 F.2d 905 (2d Cir. 1980). Further, the copyright claimant of the derivative work must have the consent of the holder of the copyright in the pre-existing work for the creation of the derivative work. *Gracen v. Bradford Exchange*, 698 F.2d 300 (7th Cir.1983). The creation of the derivative work may not be an infringement upon the pre-existing work from which it is derived. 17 U.S.C. § 103.

Transfer of ownership of a copyright is not valid unless it is evidenced by a writing signed by the owner of the rights conveyed. 17 U.S.C. § 204.

■ A certificate of registration of copyright constitutes prima facie evidence of validity of the copyright and the facts stated in the certificate. By presenting a registration certificate, a party establishes prima facie the validity of the copyright and the burden then shifts to the party challenging the copyright to dispute its validity. Once evidence is presented disputing the copy-

right, the ultimate burden of proof of the validity of the copyright is with the party claiming under it. *AutoSkill, Inc. v. National Educational Support Systems, Inc.*, 994 F.2d 1476 (10th Cir.1993).

Under the Copyright Act of 1976 and prior to its amendment, effective March 1, 1989, whenever a work protected by the Act was published, all published copies were required to include a notice of copyright in the form required by the Act. 17 U.S.C. § 401. The notice must include the name of the owner of the work, the year of the first publication of the work, and the familiar copyright symbol (©) or the word "copyright". 17 U.S.C. § 401.

## Analysis

Plaintiff Fred Riley Building Corporation ("Riley") is a corporation engaged in residential home building whose principal and president is Fred Riley. Plaintiff Bonnie's Designs, Inc. ("Bonnie's Designs") is a corporation engaged in residential design whose principal and president is Bonnie Lay. Former plaintiff Brad True, Inc. ("True") is a corporation engaged in residential home building whose principal and president is Brad True. Plaintiff Don Julian d/b/a Don Julian Builders ("Julian") is engaged in residential home building. Defendant Traditional Homes, Inc. ("Traditional Homes") is a corporation engaged in residential home building whose principal and president is the defendant Charles Cosgrove.

## I. The Summit House and the Century House

In December 1991, Bonnie's Designs completed the design of and drew the plans for a residence to be built by Riley, known as the Summit House. While during the design phase, Riley and Lay faxed preliminary drawings back and forth related to the design of the house, the final design was the work product of Lay who made the final drawings. Riley did not contribute to drafting the final drawings. In early 1992, construction of the Summit House was completed in accordance with the plans with relatively minor modifications made by Riley. The undisputed evidence established that the modifications made by Riley during construction included enlarging and modifying certain windows, increasing the height of the great room wall, changing the location of certain fixtures in the bathroom, creating a window in the loft, and other minor changes customarily made by a builder in the construction of a house.

Following the construction of the Summit House, Riley utilized the same floor plan drawings to build a house known as the Century House. The building plans for the Century House were identical to those for the Summit House with the exception that Riley modified the front elevation by a cut and paste method, adding certain trim work to the front windows and a more open entry on the front of the house. This entry had been designed by Lay for a previous house. The modifications to the Summit House plans were made without the knowledge or the consent of Bonnie Lay or Bonnie's Designs. The Century House was constructed by Riley and completed on April 17, 1993. As noted, Lay did not knowingly participate in the preparation of the Century House plans, nor was she aware of the construction of the Century House.

Throughout 1991, 1992, 1993, and 1994, Riley entered the Summit House and after its construction, the Century House, in various Parade of Homes shows sponsored by the Home Builders' Association of Greater Kansas City with the authorization of Lay to use her copyrighted plans in the guidebooks distributed during the home show. On each of the respective official entry forms, Riley represented that the copyrights to the homes were held by either Bonnie Lay or Bonnie's Designs. Further, on each entry form, Fred Riley represented that neither he nor any other person, other than Bonnie Lay or Bonnie's Designs, claimed a copyright on the plans submitted with the entry. All house plans included in the guidebooks prepared by the Home Builders' Association for the respective parades of homes included a notice that a copyright was held by Bonnie Lay. Ms. Lay testified that, at all times prior to the registration of the copyrights, she was the author and owner of the copyrights on the respective plans for the Summit House and the Century House.

Bonnie Lay was, at all times, an employee of Bonnie's Designs and prepared the plans for the Summit House in the ordinary course of her work for the corporation. At all times, Lay acted as an independent contractor as to Riley. Prior to registration of the copyrights there were no written agreements as to authorship or ownership of the copyrights between Lay or Bonnie's Designs and Riley or Fred Riley, related to the preparation of the Summit House or the Century House plans, or construction of the respective houses. Further, no oral agreements as to authorship made at the time of preparation of the plans were offered into evidence.

There is no evidence of affirmative consent by Bonnie's Designs or Lay regarding the use of the Summit House plans to build the Century House or the inclusion of the Summit House plans within the drawings for the Century House. Lay was not aware of the construction of the Century House until some time after its completion. Ms. Lay testified that certain portions of front elevations from other houses she had designed had been incorporated within the plans for the Century House without her permission.

In May of 1993, defendant Charles Cosgrove, on behalf of Traditional Homes, Inc., caused to be prepared certain drawings by Richard Beaman. Beaman prepared the drawings after an inspection of the Century House. The drawings, completed by Beaman on May 18, 1993, were the substantial equivalent of the drawings prepared by Lay for the Summit House.

On June 18, 1993, approximately one month before this action was filed, Bonnie's Designs and Riley caused registrations of copyrights on the "Model Home at 5419 Summit Court" (generally known as the Summit House), Registration No. VA 573–726 and the "Model Home at 12820 Century" (generally known as the Century House), Registration No. VA 573–725. Each of the registrations named Fred Riley Home Building Corporation and Bonnie's Designs, Inc. as authors and noted that the respective contributions were "work made for hire." Both plaintiffs were shown as copyright claimants and the registrations were signed by Fred Riley and Bonnie Lay. The Summit

House was registered as an original work. The Century House was registered as a derivative work with the preexisting work being identified as the model home at 5419 Summit Court and the drawings for that home. The material added to the preexisting work was shown as a "New Front Elevation" with "Revisions Throughout in Constructed Building."

On June 20, 1994, Riley and Bonnie's Designs executed the "Copyright Ownership Agreement and Assignment." The agreement provided that Riley and Lay would be deemed co-authors and co-owners of the original architectural drawings entitled "Plan No. 2059, The 'Summit' House" and "original architectural work entitled Plan No. 2240, The 'Century' House." The agreement further provided:

> 2. To the extent necessary to insure co-ownership of the copyrights in the above noted works, Riley and Lay *do hereby assign* to each other an interest in the copyrights in the above noted work sufficient to establish co-ownership of the copyrights in such works as tenants in common and to include the right to sue for past infringements. (Emphasis added.)

The agreement was executed approximately eleven months after the filing of this action and only six weeks before trial.

The jury returned a verdict and, in response to a special question, found that Fred Riley Home Building Corporation, was not an author of the architectural work known as the Summit House. The court also makes an independent finding that Riley was not the author or a co-author of the Summit House. The drawings for the Summit House were an architectural work made for hire, by Bonnie Lay who performed work for her employer, Bonnie's Designs. At the time the registration was filed on behalf of Fred Riley Home Building Corporation and Bonnie's Designs, Bonnie's Designs was the sole author and owner of the copyright on the Summit House.

Riley did not jointly prepare the drawings for the Summit House. Its preliminary sketches and ideas are insufficient to establish co-authorship. Bonnie's Designs and

Bonnie Lay claimed authorship and ownership of the copyright at all times prior to the filing of the registration on June 17, 1993. There is no credible evidence that Riley claimed authorship or ownership of the copyright prior to the filing of the registration. All of the evidence indicates that Riley acknowledged the copyright solely in the name of Bonnie Lay or Bonnie's Designs.

 Riley further claims ownership of a copyright on the Century House. The court finds, upon the undisputed facts, that Riley is not an author or co-author of the Century House. The changes in the Summit House to the Century House were insubstantial and were not original to Riley. The Century House was substantially similar to the Summit House. The Century House was not a joint effort between Riley and Bonnie's Designs. Riley did not have the consent of Bonnie's Designs for the creation of a derivative work. Consequently, Century House is not a derivative work of the Summit House. The contributions of Riley in Summit House are not independently copyrightable and Riley and Bonnie's Designs did not intend to be joint authors at the time of the drawings or at the time of the construction of the house. Riley and Bonnie's Designs are not joint authors for creation of Century House. No such intention was proved to exist at the time of preparation of the plans for the Century House.

The copyright of Bonnie's Designs on the Summit House protects this architectural work as incorporated in the drawings for the Century House and the structures known as the Summit House and the Century House.

While the certificate of copyright registration is prima facie evidence of the validity of the plaintiffs' claims of copyright to establish the facts related to the parties' claims, the presumption of validity is successfully rebutted by the defendants through the evidence presented in the case.

Registration No. VA 573–726 related to the model home at 5419 Summit Court is invalid as to Fred Riley Home Building Corporation, but is effective as to Bonnie's Designs, the true author and owner of the copyright. The invalidity of the copyright as to Riley does not affect the validity of the copyright as to Bonnie's Designs.

The purported assignment of the copyright related to Summit House dated June 20, 1994, is effective to assign jointly to Bonnie's Designs and Riley ownership of the claimed copyright in the Summit House. However, by its own terms, the assignment is effective as of the date of its execution. There is no evidence, by this agreement or otherwise, that the ownership in the copyright had been previously assigned between the parties in the manner required by 17 U.S.C. § 204.

While it might be argued that the assignment relates back to the date of the registration of the copyright, any infringement on this copyright occurred prior to the date of registration. Since Riley's claim arises solely by virtue of the written assignment, Riley has no claim for infringement by the defendants on its own behalf. Further, there was no evidence in this action that the ownership and assignment agreement had been submitted to the copyright office for registration and Riley's claim herein is not asserted under a valid registration on his behalf. The registration under which Riley now claims is based upon a claim of authorship which the court has determined to be invalid. Further, the assignment by Bonnie's Designs only purports to transfer a present interest between the parties. It does not confirm a prior oral agreement between the parties related to assignment of the copyrights.

Copyright No. VA 573–725 related to the Model Home at 12820 Century, on an architectural work known as the Century House, is invalid. It is not a derivative work of Summit House as the term is defined under the Copyright Act. Fred Riley Home Building Corporation is not an author of the Century House, nor did he have any interest in a purported copyright on the Century House copyright prior to June 20, 1994, when the ownership and assignment agreement was executed. There was no oral or written agreement prior to the registration of this copyright evidencing that Riley was either a co-author or co-owner of the copyright. Rather, the evidence clearly established that Riley's contribution to the architectural work was not independently copyrightable, and

that there was no express intent between Riley and Bonnie Designs that Riley would be a co-author or co-owner at the time the architectural work was created. Further, the ideas and features incorporated by Riley in the Century House did not change the basic character of the work, the Summit House. The ideas were not original to Riley and the features added to the front of the house were ideas taken from other houses drawn by Bonnie Lay.

There is no evidence of consent by Bonnie's Designs to the derivative work. The evidence clearly established that Bonnie's Designs was unaware of the construction of the Century House at the time of its construction and had no knowledge of the incorporation into the Century House of either the design of the Summit House or other features utilized by Lay in other homes drawn for Riley. Bonnie's Designs did not intend to create a derivative work and did not participate knowingly in the creation of the Century House. Further, Century House is not a derivative work of Summit House because it is not substantially different from Summit House. Any changes from the Summit House plan to the Century House were trivial, were created by mechanical copying and did not represent the original product of Riley.

The jury found that defendants infringed on the copyright of Bonnie's Designs. Consequently, Bonnie's Designs, as the owner of the copyright on the Summit House, which was infringed by defendants, is entitled to an injunction against Charles Cosgrove and Traditional Homes, Inc., from further infringement on the copyright on the Summit House evidenced by Registration No. VA 573–726. Judgment on the jury verdict should be entered accordingly.

## II. The Seville House

 In late 1991, Bonnie's Designs prepared certain construction drawings for a home to be built by Brad True, Inc. The undisputed evidence disclosed that True provided no preliminary sketches, but that True simply reviewed the design of what is known as "The Seville" house by standing beside Lay as she sketched various plans. Lay, however, did all of the drafting of the plans

and the plans were her work product. While Brad True may have offered ideas and suggested features, he did not participate in the actual preparation of the drawings which were completed by Bonnie Lay as an employee of Bonnie's Designs. The house was constructed in accordance with the plans in February 1992.

At the time of Bonnie Lay's preparation of "The Seville" house plans for True, she was acting as an independent contractor. There was no writing between Bonnie's Designs and Brad True, Inc., related to the authorship or ownership of the plans. Ms. Lay testified that she was the author and owner of the plans at the time of their preparation and prior to registration.

Richard Beaman inspected several homes built in accordance with the plans prepared by Bonnie's Designs and drew his own set of plans which were substantially similar to "The Seville" house. Beaman's plans were completed in May 1992.

On October 12, 1993, Brad True, Inc., and Bonnie's Designs, registered "The Seville," "No. 2045.01 Home Design" as an architectural work with the copyright office, stating in the registration that they were the co-authors and co-copyright claimants. "The Seville" was registered as a derivative work of prior home designs and drawings which, the evidence established, had been prepared by Lay as an independent contractor for Brad True, Inc., in the same manner as the registered design.

Subsequently, on November 3, 1993, Bonnie's Designs and Brad True, Inc., executed the "Copyright Ownership Agreement and Assignment" in the identical form as that executed by Riley and Bonnie's Designs. The agreement purportedly acknowledged the parties' joint contribution to the creation of original architectural drawings entitled "No. 1406 Home Design and Drawings" and "No. 1863 Home Design and Drawings" and "The Seville," "No. 2045.01 Home Design." The agreement also provided:

2. To the extent necessary to insure co-ownership of the copyrights in the above noted works, True and Lay *do hereby assign* to each other an interest in the copy-

rights in the above noted work sufficient to establish co-ownership of the copyrights in such works as tenants in common and to include the right to sue for past infringements. (Emphasis added.)

The agreement was executed on November 3, 1993, approximately ten days prior to the commencement of this action on behalf of Brad True, Inc.

The facts are undisputed. Immediately prior to the execution of the registration for submission to the copyright office, Lay was the sole author and owner of the architectural work referenced in the registration. It was an architectural "work made for hire" by Bonnie Lay on behalf of Bonnie's Designs.

The jury found and the court independently finds that Brad True, Inc. is not a co-author of the copyright in "The Seville," Copyright No. VA 595–473. The court concludes that Brad True, Inc. was not the co-author or co-owner of the copyright in "The Seville" at the time of the design of "The Seville." Further, he did not become either an author or owner of the copyright by construction of such a house based upon "The Seville" plan.

The written drawings were prepared by Lay on behalf of Bonnie's Designs. True did not participate in the drawings. True's contribution to the effort was ideas and features only.

At all times, Lay held copyrights to the works from which "The Seville" was derived. There is no evidence that True had any interest in these preexisting works. There was no written agreement that True would be a co-author or owner of the copyrights in "The Seville" prior to the October 12, 1993, registration of the copyright. To the extent that True acquired an interest in the copyright by virtue of the assignment dated November 3, 1993, his interest arose on that date. The assignment does not relate back according to its own terms. No evidence has been produced that the assignment has been registered by the copyright office identifying True as a co-owner under the assignment. The existing registration, No. VA 595–473, does not grant Brad True an interest by virtue of assignment. There is no evidence

that ownership in the copyright was assigned prior to November 3, 1993 in the manner required by 17 U.S.C. § 204.

Bonnie's Designs is the registered owner of Copyright No. VA 595–473 and is the sole plaintiff entitled to prosecute this action for infringement. The jury found that the defendants infringed the copyright of Bonnie's Designs. Bonnie's Designs is entitled to an injunction against Charles Cosgrove and Traditional Homes, Inc., from further infringement on the copyright on "The Seville" evidenced by Registration No. VA 595–473 and to judgment on the jury verdict.

### III. The Roseberry House

For many years prior to early 1988, R.L. Keith was employed as a residential designer by Designworks, Inc. ("Designworks"). In late 1987 or early 1988, during the course of his employment and as an independent contractor as to Don Julian, Keith designed the plans for a house identified as Plan No. 88–103, the "Stratford House," for Don Julian d/b/a Don Julian Builders. The plan for the Stratford House was designed by Keith with Julian providing input in the form of ideas and features. In accordance with the custom between Keith and Julian, Julian may have provided certain sketches for the design prior to the final plans being drawn by Keith. While there was testimony by Julian that he assisted in the final drawings Julian did not identify any specific portions of the final drawings which had been drawn by him.

At the time of the preparation of these plans, Keith was secretary of Designworks and his compensation was in the form of a share in the corporation's profits. Keith left Designworks in early 1988, at which time he took the original drawings for the Stratford House with him. Keith had no written agreement with Designworks related to the authorship or ownership of the drawings or plans he prepared while associated with Designworks. Following Keith's departure from Designworks, the company continued in the business of designing residential structures.

The Stratford House plans were copied on blueprints displaying the Designworks logo and the corporate name and address of De-

signworks. The required statutory copyright notice, "Designworks, Inc. © 1988," was placed on pages 2 and 3 of the blueprints, which pages represented the floorplans for Stratford House.[1]

On November 5, 1988, Keith, on behalf of Designworks, executed an agreement purportedly assigning to Don Julian, all rights associated with the plans to Stratford House, notwithstanding that Keith was no longer employed by Designworks. Subsequently, on November 9, 1993, only days before this action was filed on behalf of Don Julian, Keith executed, individually, another assignment of the copyright in favor of Julian, transferring the copyright to the Stratford Plan No. 88–103 including all revised and modified versions thereof. This assignment provided that the architectural drawings on the Stratford House, which were "original to" Keith, were assigned to Julian.

In early 1991, Keith prepared, as an independent contractor for Julian, a revision of the Stratford plan generally known as the "Roseberry" or also known in the litigation as "Roseberry I." The plan was designed primarily by Keith with Julian again submitting ideas and suggesting features. While there was testimony by Julian that he assisted in drawing the final plans, Julian did not identify any specific portions of the final plans which he had drawn. The final drawings were made by Keith.

The evidence established that "Roseberry I" was an updating of Stratford House and Julian claims that it is a derivative work of the Stratford House. No consent was obtained from Designworks, as the owner of the copyright on Stratford House, for the use of the Stratford plan to prepare a derivative work. Julian completed construction of a house in accordance with the "Roseberry I" plan in approximately April 1991.

At the time of completion of the plans for the "Roseberry I," Keith had no written agreement with Julian related to the preparation of the plans or the authorship or ownership of the plans. However, on February 6, 1991, a written document was executed by Keith assigning all rights to the "Roseberry I" plan to Julian and acknowledging that Julian would have copyright protection. Mr. Keith testified that prior to the execution of this agreement, only he owned rights in the plan, including the copyright.

On October 18, 1993, the copyright office issued a Certificate of Registration No. VA 595–481 for the "Roseberry I" architectural work, which was claimed to be a derivative work of the Stratford House. The work was claimed to have been jointly authored by Robert L. Keith and Donald Julian. Julian, as the copyright claimant, claimed ownership through written assignment.

Subsequently, on November 9, 1993, the parties again executed an assignment of the copyright in the "Roseberry I" plan. This agreement was executed only days before Julian filed this action for infringement against the defendants.

In December of 1992, the defendants contracted with Mr. and Mrs. Tom Dulick to construct a house which was substantially similar to the "Roseberry I." The defendants purchased the plan requested by the Dulicks from Greg Prieb, a home builder, without knowledge that the Prieb plan was substantially similar to the "Roseberry I." The defendants paid Prieb the sum of $1,000.00 for the plan. At trial, Prieb testified that he had taken the plans, without Julian's permission, from the "Roseberry I."

Although the evidence was conflicting, the jury found that Prieb infringed on the copyright claimed by Julian on the "Roseberry I." Consequently, the jury also found that defendants infringed on the "Roseberry I" plan.[2]

---

1. See Trial Exhibit 139, pgs. 2 and 3. The copyright symbol, ©, is not visible on Trial Exhibit 132, the exhibit identifying the blueprint as prepared for Julian. However, the quality of this copy is poor and much of the "fine print" is not readable.

2. The court advised the parties, prior to submission of the matter to the jury, that judgment would be entered for the defendants on the claims of Julian. Notwithstanding, the court submitted to the jury the special questions related to infringement of the alleged copyright on "Roseberry I" in order to avoid the necessity of a second trial should an appellate court determine that this court is in error on the issues related to the use of the Stratford plan for a derivative work by Julian.

■ The court finds that the November 5, 1988, transfer of the rights associated with the Stratford Plan No. 88–103 by R.L. Keith, purportedly on behalf of Designworks to Julian is invalid. The evidence establishes that the Stratford plan was "work made for hire" by Keith on behalf of his employer, Designworks, who was both the author and owner of the plan. Although the assignment purported to be made on behalf of Designworks, it was not executed by an authorized representative, as Keith was no longer employed by the company at the time of assignment. There is no evidence of a written agreement between Designworks and Keith or Julian transferring the ownership of the copyright in the Stratford House plan to either of them. Since Keith did not own the rights to the Stratford Plan, the assignment on November 5, 1988 was ineffective and conveyed nothing.

The assignment of the copyright dated November 9, 1993, of the Stratford House copyright by Keith is also unauthorized and invalid. This assignment purports to be executed by Keith in his own individual capacity. Keith did not own the copyright which he attempted to convey.

Plaintiff has argued that the issue of the validity of the ownership and validity of the copyright in the Stratford House should have been submitted to the jury. However, the only credible evidence in the case establishes the ownership of the plan in Designworks. There is no written agreement between Designworks and Keith which allowed Keith to retain authorship or ownership of plans prepared by him while he was employed by Designworks as required by 17 U.S.C. § 201. On the other hand, there is substantial persuasive evidence that the copyright was claimed by Designworks. The copyright notice of Designworks was clearly displayed on the Stratford plans as then required by 17 U.S.C. § 401, in the form required by the Act. The blueprints bore the logo of Designworks as well as the corporate name and the corporation's addresses and telephone numbers. There is no reference to R.L. Keith on the blueprints. The conduct of the parties subsequently supports the conclusion that the ownership of the plans was in Designworks. By letter of October 27, 1988, Julian requested transfer of all rights associated with the plans. The letter was prepared for the signature of Bob Keith on behalf of Designworks and it was signed in that form by Keith and returned to Julian on November 5, 1988, several months after Keith left the employ of Designworks. There is *no* evidence of a written transfer of the copyright to the Stratford plan by Designworks. The uncorroborated testimony of Keith, now almost six and a half years after the fact, of an oral agreement with Designworks, allowing him to prepare drawings for Julian, including the Stratford plan, in which his employer would have no interest, is insufficient to create an issue of fact for jury determination in light of the overwhelming written evidence establishing ownership of the copyright in the Stratford plan in Designworks by documents generated contemporaneously with the events.

Julian is not a co-author of the Stratford plan. There was no evidence of intent of co-authorship between Designworks and Julian. To the contrary, Keith claimed that Designworks had no interest in the plan at the time of its preparation. Further, there was no evidence of intent of co-authorship between Julian and Keith at the time of preparation of the plan. Keith testified that he was the author of the plan. Julian has not identified, and there was no evidence otherwise identifying, specific contributions by Julian to the preparation of the plans which contributions are independently copyrightable. Designworks is the author of the Stratford House architectural work, evidenced by Plan No. 88–103, in that, its employee, R.L. Keith authored the work while in the employ of Designworks. The copyright to the Stratford House is owned by Designworks.

■ The Copyright No. VA 597–481 as to the architectural work known as "Roseberry" or "Roseberry I" is invalid because it is based on the validity of the ownership of the copyright in the Stratford House by R.L. Keith or his authority on behalf of Designworks to convey the rights. The registration of the copyright on the "Roseberry I" plan is also invalid because the "Roseberry I" plan, as constructed, is substantially similar to the

Stratford plan and is admittedly a work derived from it. The copyright on the "Roseberry I" work is dependent upon the lawful use of the Stratford plan in its creation. The "Roseberry I" plan is not copyrightable as a derivative of the Stratford plan as no consent has been given by the owner of the copyright on the Stratford plan for such a derivative work. Further, the evidence is that "Roseberry I" was an alteration of the Stratford plan by Keith and Julian. There is no evidence that the work is the original product of Keith or Julian.

"Roseberry" or "Roseberry I" architectural work is not a copyrightable derivative work of the Stratford House, because neither Keith nor Julian had the consent of the owner of the copyright, Designworks, for a derivative work. The claimant of a derivative work must establish that he is lawfully entitled to use the copyright in the preexisting work for the preparation of the derivative work. The proof in this case fails to establish that either Keith or Julian were lawfully entitled to use the copyright in the Stratford House.

■ The court recognizes that presentation of a certificate of registration is prima facie proof of ownership and of the facts contained in the registration. However, such evidence is subject to rebuttal. The defendants have successfully rebutted the presumption that "Roseberry I" is a derivative work of the Stratford plan. The evidence that a copyright was claimed in the Stratford plans by Designworks in accordance with the Act, and that the assignment of the copyright was by Keith who was not then an employee or authorized agent of Designworks and was thus ineffective to transfer ownership of the copyright, is sufficient to rebut the presumption that "Roseberry I" is a derivative of Stratford. The burden then shifted to the plaintiff to prove that "Roseberry I" is a derivative of Stratford under 17 U.S.C. § 103. The plaintiff Julian failed to carry his burden of proof. Julian failed to prove that the use of the Stratford plan in creating the "Roseberry I" was lawful. In fact, the evidence was to the contrary.

On November 23, 1993, Keith and Julian registered copyrights related to the "Rose-berry" or "Plan No. 2104; Roseberry I," Registration No. VA 595–481, and "Plan No. 9201; Roseberry II," Registration No. VA 595–480. The registration of the copyright to "Roseberry I" is invalid in that the works are dependent upon a valid use of the copyright in the Stratford House in preparing the derivative work known as the "Roseberry I." "Roseberry II" is claimed to be a derivative work of "Roseberry I." Therefore, the copyright registration to "Roseberry II" is also invalid. Judgment should be entered for the defendants on this claim.

### Satisfaction of Judgment

The defendants claim that Bonnie's Designs is barred from proceeding because of the satisfaction of a judgment filed as to an alleged joint infringer.

■ The satisfaction of judgment does not bar this action on behalf of Bonnie's Designs, against defendants Traditional Homes, Inc., and Charles Cosgrove for their copyright infringement. Neither would the action be barred by the doctrine of accord and satisfaction. While satisfaction of the judgment may preclude double recovery on behalf of Bonnie's Designs, it does not preclude a determination of the issues of infringement and damages. Further, it does not preclude the court from entering an injunction against further infringement by the defendants.

### Plaintiffs' Motion to Amend the Pretrial Order

At the conclusion of the trial, plaintiffs moved to amend the Pretrial Order to assert a claim for copyright infringement on the Summit House. The reasons for the court's decision are stated on the record.

The claim had been included in the amended complaint but had not been included in the pretrial order. The case was tried on this claim, the evidence was submitted on the claim without objection, and the evidence established the fact that if there was any claim for copyright infringement by the defendants, it was as to the copyright held by Bonnie's Designs on the Summit House. The court found that amendment of the pretrial order to include such claim was neces-

sary to prevent manifest injustice. Therefore, the court granted plaintiffs' motion.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**

a. Plaintiff's motion to amend the final pretrial order under Count I to include a claim for infringement on the copyright on the Summit House is granted.

b. Defendants' motion for judgment as a matter of law on the claim of Bonnie's Designs for copyright infringement on Century House is granted.

c. Defendants' Motion for Judgment as a Matter of Law on the claims of copyright infringement by Fred Riley Home Building Corporation is granted. Further, judgment is entered on the jury verdict in favor of defendants Charles Cosgrove and Traditional Homes, Inc. against plaintiff Fred Riley Home Building Corporation on Count I.

d. Defendants' Motion for Judgment as a Matter of Law on the claims for copyright infringement by Don Julian d/b/a Don Julian Builders is granted.

e. Judgment is entered on the jury verdict in favor of Bonnie's Designs, against defendants Charles Cosgrove and Traditional Homes, Inc., on Count I for infringement of the copyright on the Summit House in the amount of $1,500.00.

f. Judgment is entered on the jury verdict in favor of Bonnie's Designs against defendants Charles Cosgrove and Traditional Homes, Inc., on Count II in the amount of $1,309.50.

g. Defendants Charles Cosgrove and Traditional Homes, Inc., are enjoined from constructing, reproducing, duplicating, copying, marketing, selling, or displaying any architectural work which is substantially similar to the architectural work of Bonnie's Designs, identified as the Summit House, which is the subject of U.S. Copyright Registration No. VA 573–726 owned by plaintiff Bonnie's Designs.

h. Defendants Charles Cosgrove and Traditional Homes, Inc., are enjoined from constructing, reproducing, duplicating, copying, marketing, selling, or displaying any architectural work which is substantially similar to

plaintiff Bonnie's Designs architectural work identified as "The Seville," which is the subject of U.S. Copyright Registration No. VA 595–473 owned by plaintiff Bonnie's Designs.

i. All claims of Fred Riley Home Building Corporation against Charles Cosgrove and Traditional Homes, Inc., are dismissed with prejudice and judgment is entered in favor of Charles Cosgrove and Traditional Homes, Inc., on Count I as to the claims of plaintiff Fred Riley Home Building Corporation.

j. All claims of Don Julian d/b/a Don Julian Builders against Charles Cosgrove and Traditional Homes, Inc., are dismissed with prejudice and judgment is entered in favor of Charles Cosgrove and Traditional Homes, Inc., on Count III.

k. The parties shall bear their own costs.