Juan VASQUEZ and Lily Patino, Plaintiffs,

v.

Christina YBARRA, Defendant.

No. CIV.A. 99–1265–MLB.

United States District Court, D. Kansas.

July 11, 2001.

Bradley J. Brown, Martin, Pringle, Oliver, Wallace & Swartz, L.L.P., Wichita, KS, for Jose Juan Vasquez, Lily Patino, plaintiffs.

Steven D. Gough, Alan R. Pfaff, Powell, Brewer & Gough, L.L.P., Wichita, KS. for defendant.

Christina Ybarra, Liberal, KS, pro se.

### *MEMORANDUM AND ORDER*

BELOT, District Judge.

This case comes before the court on the parties' cross motions for summary judgment (Docs. 35 and 38). Plaintiffs, owners of the Vargas Restaurant in Liberal, Kansas, brought this action against defendant, the owner of a competing restaurant. Plaintiffs have asserted claims of copyright infringement, 17 U.S.C. § 101 *et seq.*, un-

fair competition under the Lanham Act, 15 U.S.C. § 1116, and misappropriation of trade secrets, K.S.A. § 60–3322. Plaintiffs claim defendant is liable because, two years after they bought their restaurant from defendant's parents, she opened up a similar restaurant "across the alley" from their restaurant, used identical menu items and stole two cooks (Doc. 22 at 3–4).

Defendant moves for summary judgment, summarizing the case as a simple "family feud" between the owners of competing Mexican restaurants in the small town of Liberal (Doc. 36 at 1). She claims the copyright claim fails because plaintiffs did not *create* their menu. In fact, defendant asserts that her parents created the menu before they sold the restaurant to plaintiffs. To the extent plaintiffs added menu items to the original menu, which have now appeared on defendant's menu, defendant argues those items are not copyrightable because they lack a creative element. Defendant argues plaintiffs' trademark claim fails because plaintiffs fail to show proof of a protectable trademark, customer confusion and/or damages. Furthermore, defendant argues she is entitled to summary judgment on the state claim for misappropriation of trade secrets because plaintiffs fail to show trade secrets, that they took reasonable steps to protect any such trade secrets and/or that the information was gathered by improper means.

Plaintiffs respond with a combined opposition to defendant's motion for summary judgment and their own motion for summary judgment (Doc. 38). Plaintiffs state they bought the Vargas restaurant from defendant's parents, making "massive changes" to the menu and presentation of the food. Two and a half years after the purchase, defendant, in partnership with her parents, photocopied their menu, hired two of their three cooks, opened a restaurant 100 feet away from the Vargas, and served Vargas menu items using Vargas recipes. As a result, plaintiffs claim defendant appropriated nearly half of the Vargas' goodwill. Plaintiffs argue defendant, in her motion for summary judgment, admitted sufficient facts to allow the court to grant them summary judgment on all three of their claims.

### SUMMARY JUDGMENT STANDARDS

The usual and primary purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." An issue is "genuine" if sufficient evidence exists on each side "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998) (citations omitted).

The moving party must initially show both an absence of a genuine issue of material fact, as well as entitlement to judgment as a matter of law. *Id.* at 670. The nature of the showing depends upon whether the movant bears the burden of proof at trial with the particular claim or defense at issue in the motion. If the nonmoving party bears the burden of proof, the movant need not "support its motion with affidavits or other similar materials *negating* the opponent's" claims or defenses. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548 (emphasis in original). Rather, the movant can satisfy its obligation simply by pointing out the absence of evidence on an essential element of the nonmovant's

claim. *Adler*, 144 F.3d at 671 (citing *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548). On the other hand, if the movant has the burden of proof on a claim or defense raised in a summary judgment motion, it must show that the undisputed facts establish every element of the claim or defense. *E.g., United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc).[1]

Once the moving party properly supports its motion, the burden shifts to the nonmoving party, "who may not rest upon the mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Muck v. United States*, 3 F.3d 1378, 1380 (10th Cir.1993). In setting forward these specific facts, the nonmovant must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671. If the evidence offered in opposition to summary judgment is merely colorable or is not significantly probative, summary judgment may be granted. *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 533 (10th Cir.1994). A party opposing summary judgment "cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir.1988). Put simply, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Certain rules govern the presentation of facts and evidence. Local Rule 56.1 requires the movant to set forth a concise statement of material facts. D. Kan. Rule 56.1 (2000). Each fact must appear in a separately numbered paragraph and each paragraph must refer with particularity to the portion of the record upon which the movant relies. *Id.* An opposing memorandum must contain a similar statement of facts. The opponent must number each fact in dispute, refer with particularity to those portions of the record upon which it relies, and if applicable, state the number of the movant's fact which is in dispute. The court may, *but is not obligated to*, search for and consider evidence in the record that would rebut the movant's evidence, but that the opponent has failed to cite. *Adler*, 144 F.3d at 672. All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment *unless specifically controverted* by the statement of the opposing party. *See Gullickson v. Southwest Airlines Pilots' Ass'n*, 87 F.3d 1176, 1183 (10th Cir.1996) (applying local rules of District of Utah). A standing order of this judge also precludes drawing inferences or making arguments within the statement of facts.

The parties need not present evidence "in a form that would be admissible at trial, but the content or substance of the evidence must be admissible. For example, hearsay testimony that would be inadmissible at trial may not be included ...." *Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 485 (10th Cir.1995) (internal quotations and citations omitted). Similarly, the

---

**1.** The court notes that the Rule 56 summary judgment standard is identical to that of a Rule 50 judgment as a matter of law standard, *e.g., Pendleton v. Conoco, Inc.*, 23 F.3d 281, 286 (10th Cir.1994), and that "[t]he standard is particularly strict when such a ruling is made in favor of the party with the burden of proof." *Weese v. Schukman*, 98 F.3d 542, 547 (10th Cir.1996). Under this strict test, the party bearing the burden of proof at trial earns a favorable ruling only when evidence is presented that "the jury would not be at liberty to disbelieve." *Id.*

court will disregard conclusory statements and statements not based on personal knowledge. *Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1382 (10th Cir.1994) (regarding conclusory statements); *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir.1995) (requiring personal knowledge). Last, the court may disregard facts supported only by references to documents unless the parties have stipulated to the admissibility of the documents or the documents have been authenticated by and attached to an affidavit meeting the requirements of Rule 56(e). Fed.R.Civ.P. 56(e); D. Kan. Rule 56.1; 10A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2722 (2nd ed.1994) (footnotes omitted).

With these rules in mind, defendant objects to several of plaintiffs' additional statements of fact. Defendant argues several of these statements are conclusory statements or expert opinions, citing the plaintiffs' own affidavits which simply repeat the corresponding statement verbatim.[2] Plaintiffs reply that defendant's objection alone is insufficient to controvert all such statements of fact and, in accordance with Rule 56, they are deemed admitted (Doc. 46 at 2). Plaintiffs forget the burden of production and persuasion is on them and without supporting, admissible evidence, defendant need not come forward with evidence to controvert a fact. Accordingly, the court disregards plaintiffs' paragraphs 60, 63, 64, 73, 77, 78–84, 86, 87, 92 and 94 as inadmissible expert testimony and paragraphs 57–60, 63–67, 70–73, 75, 78–92 and 95 as conclusory legal statements.

In the end, when confronted with a fully briefed motion for summary judgment, the court must determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Accordingly, the court must review the "factual record and reasonable inferences therefrom in the light most favorable to the nonmoving/opposing party." *Kidd v. Taos Ski Valley, Inc.*, 88 F.3d 848, 851 (10th Cir.1996); *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2514. If sufficient evidence exists on which a trier of fact could reasonably find for the non-moving party, summary judgment is inappropriate. *Prenalta Corp. v. Colorado Interstate Gas Co.*, 944 F.2d 677, 684 (1991).

### FACTS

The Vargas Restaurant in Liberal, Kansas, specializes in the service of Mexican food. The Vargas has substantial goodwill, drawing patrons from Texas, Oklahoma, Kansas and Missouri (Doc. 38 ¶ 32, uncontroverted). Plaintiffs are the current owners of the Vargas. They purchased the Vargas from Romone and Irma Ybarra, defendant's parents, on November 15, 1996 (Doc. 36 ¶¶ 1,2, uncontroverted). Plaintiffs and the Ybarras entered into a purchase contract which stated that the sale included "all of the business" and its "goodwill." (Doc. 36, Exb.A).

Irma Ybarra remained at the Vargas for one week after the sale to instruct plaintiffs on how to prepare the food (Doc. 36 ¶ 7, uncontroverted). For approximately

---

**2.** For example, plaintiffs' paragraph 60 states: "The information that Plaintiffs claim as trade secret is subject to reasonable efforts to protect it by Plaintiffs based on the industry practices within the Mexican Restaurant industry in Liberal, Kansas." (Doc. 38 ¶ 60). As support for such a "factual" contention, plaintiffs cite to identical statements in their own affidavits. Not only is the statement a legal conclusion, but plaintiffs have not been listed as expert witnesses in the pretrial order (Doc. 22 at 22).

one year after the sale, plaintiffs continued to use the menu the Ybarras developed for the Vargas (Doc. 36 ¶ 6, uncontroverted).[3] That menu ("Vargas Menu # 1") is a place-mat style menu with one side, the red side, in Spanish and the other side, the blue side, in English (Doc. 36, Exb. C). The English side offers twelve dinner items, four combination plates and various side extras and beverages. The Spanish side offers fifteen dinner entrees and a section for beverages. The only item changed by plaintiffs, while this menu was in use, was to the Chihuahua plate, an entree only offered on the Spanish side. Plaintiffs changed the plate by using rib eye meat instead of inside round (Doc. 36 ¶ 9, uncontroverted).

Approximately one year after plaintiffs purchased the Vargas, they replaced Vargas Menu # 1 with a new menu ("Vargas Menu # 2") (Doc. 36, Exb.E). Vargas Menu # 2 is a book-style menu with a colorful picture of a young woman wearing a bandoleer along with a sombrero, a bugle, and the Mexican flag. Plaintiffs increased the number of menu options on Vargas Menu # 2. The menu contains separate sections for breakfast, lunch, appetizers, dinners, children's dinners, seafood, a la carte and beverages. Vargas Menu # 2 contains over 100 menu items including the menu items which were on Vargas Menu # 1.[4] While Vargas Menu # 2 was being used, defendant and her parents ate at the Vargas and ordered from the menu (Doc. 38 ¶ 50 and defendant's response; Doc. 44 ¶ 48).

In May, 1999, about a year and a half after plaintiffs began using Vargas Menu # 2, defendant opened the La Hacienda Restaurant, assisted by her parents and sister (Doc. 36 ¶ 11, uncontroverted). The La Hacienda was located across an alley from the Vargas (Doc. 38 ¶ 70, uncontroverted). Defendant and her mother, Irma Ybarra, prepared the first menu for the La Hacienda Restaurant ("La Hacienda # 1"), which contained over one hundred menu items (Doc. 36 ¶¶ 12, 36 uncontroverted; Exb. F). Irma Ybarra thought it would be all right to use the names of the dishes on the Vargas Menu # 1 because those names were on the menu before she and her husband sold the Vargas to plaintiffs (Doc. 36 ¶ 13, uncontroverted).[5]

The La Hacienda Menu # 1 is a six page plus cover, plain, black and white menu, stapled in the upper left hand corner. La Hacienda Menu # 1 was never professionally printed and photocopies were used (Doc. 36 ¶ 14, uncontroverted).[6] However,

---

3. Plaintiffs state that the menu was not developed by the Ybarras, but was developed by the prior owners of the Vargas restaurant (Doc. 36 ¶ 33). However, as defendant points out, plaintiffs cite to their own affidavits without stating the basis of their personal knowledge of this fact.

4. The dinner entrees on both Vargas Menus # 1 and # 2 include: the Vargas Special, Enchiladas Suiza's, Chicken Tacos, Quesadillas, Chicken Flautas, the Tacos, Enchiladas or Tostadas plate, Beef or Chicken Fajitas, the Durango, the Tijuana Plate, the Guadalajara, the Sonora, the Tampico, the Chihuahua, and the Menudo plate.

5. The dinner entree names included the Enchiladas Suiza's, Chicken Tacos, Quesadillas, Chicken Flautas, Tacos, Enchiladas, or Tostadas, Beef or Chicken Fajitas, Durango, Tijuana Plate, Guadaloajara, Sonora, Tampico, and Chihuahua. La Hacienda Menu # 1 also offers a "Hacienda Special" which offers the same dinner as the "Vargas Special" on Vargas Menu # 2, both of which are offered for $6.95 (Doc. 36, Exb.E, F).

6. According to the affidavit of Salvador Medina, attached to plaintiffs' motion for summary judgment (Doc. 36, Exb.I), a "representative" of the La Hacienda Restaurant approached him in April, 1999 to print the menu. Medina states that he refused because it was "virtually identical" to the Vargas menu. Irma Ybarra, however, states that neither she nor, to her knowledge, any employee of the La Hacienda

because of complaints Irma Ybarra received from plaintiffs' attorney, she showed La Hacienda Menu #1 to her attorney. He told her to make changes so that different names were used for the menu items, which she did (Doc. 36 ¶ 13, uncontroverted). The photocopied La Hacienda Menu #1 was used for approximately one week (Doc. 36 ¶ 14, uncontroverted). Comparing Vargas Menu #2 with La Hacienda Menu #1, the fronts look different. The words on the front are different. The Vargas Menu #2 has a breakfast section. The La Hacienda Menu #1 does not. The Vargas Menu #2 has a lunch section, numbering certain items. The La Hacienda Menu #1 does not. The arrangement of the sections on the menus is different. The colors on the inside of the two menus are different. At his deposition, plaintiff Vasquez acknowledged that the menus look different (Doc. 36 ¶ 17, uncontroverted). The Vargas Menu #2 contains ten seafood items (Doc. 38 ¶ 42, uncontroverted).[7] The La Hacienda Menu #1 contains eight seafood menu items, seven of which are identical to the seafood items in the Vargas Menu #2 (Doc. 38 ¶ 43 and defendant's response).[8]

On June 7, 1999, plaintiff registered the copyright on Vargas Menu #2 (Doc. 38 ¶ 29 and defendant's response).

In response to plaintiffs' continued objections, defendants made further changes to the La Hacienda menu and produced La Hacienda Menu #2 (Doc. 38 ¶ 58, uncontroverted; Doc. 36, Exb. G). La Hacienda Menu #2 is a white, book-style menu with red, green and black lettering. The front cover has the words "Bienvenidos a la Hacienda Restaurant Specializing in Authentic south of the border food" along with a black and white photograph of a man and woman, wearing traditional Mexican outfits, poised as if ready to dance. The menu offers an appetizer section, a dinner section and twenty-eight combination plates. The appetizer offerings did not change from La Hacienda Menu #1. As for the dinner offerings, La Hacienda Menu #2 continued to offer the Hacienda Special, Chicken Tacos, Quesadillas (meat or cheese), Chicken Flautas, the Tacos, Enchiladas, or Tostadas plate, and Beef or Chicken Fajitas. It is apparent the Durango was renamed the Zacatecas. The Tijuana Plate became the Mexicali Plate. The Guadalajara transformed into the Co-

---

ever took a menu to Medina for printing. Instead, she claims Medina came into the La Hacienda soliciting their printing business. Irma Ybarra claims Medina gave her a menu which he said they could use and that this menu became La Hacienda menu #1 (Doc. 44, Exb.D). It appears from plaintiffs' brief that their claims for copyright infringement and trade dress are also based on this menu, along with the subsequent printed La Hacienda menus, which may or may not have been taken to Medina (Doc. 22 at 3; Doc. 38 at 30). However, neither party has attached a copy of this non-published La Hacienda menu for the court to assess the claims. Nor has defendant addressed any of her arguments to this menu.

7. The Vargas Menu #1 "Spanish side" only contained two seafood items: Majarra fritta and Pescado frito (Doc. 44 ¶ 41, Doc. 36, Exb. C).

8. The Majarra fritta and Pescado frito (fried fish) appear on the Vargas Menu #1, Vargas Menu #2 and La Hacienda Menu #1 and, in all three cases, are accompanied by a side of french fries, pico de gallo, guacamole dip and three flour or corn tortillas. Both the Vargas Menu #2 and the La Hacienda Menu #1 also offer shrimp soup, fish soup, ranchero shrimp (with beans, rice and guacamole dip), shrimp a la diabla, and shrimp al mojo de ajo (with rice, beans and guacamole dip). The menu items are listed in the same order. Vargas Menu #2 also offers shrimp cocktail, seven oceans cocktail and seven oceans soup. The La Hacienda Menu #1 also offers shrimp with rice (with lettuce guacamole, bean and rice). (Doc. 36, Exb.E, F).

lima. The Sonora became the Sinaloa. The Tampico was renamed the Tamaulipos. The Chihuahua was now Steak Ala Parilla.

Plaintiffs complained about the La Hacienda's second menu and even sued defendant in state court.[9] Irma Ybarra talked to her attorney about the second menu and he told her to make more changes. The menu was changed again ("La Hacienda Menu # 3"). The invoice for printing the third menu is dated July 19, 1999 (Doc. 36 ¶ 15, uncontroverted). This third menu (attached to defendant's memorandum in support of her motion as Exhibit H) was first used sometime in July, 1999 and contains over seventy menu items (Doc. 36 ¶ 16, uncontroverted; Doc. 38 ¶ 38, uncontroverted). Comparing Vargas Menu # 2 with La Hacienda Menu # 3, the fronts look different. The words on the front are different. Furthermore, unlike La Hacienda Menu # 2, the color, writing, and arrangement of the two menus are different (Doc. 36 ¶ 18, uncontroverted).

Plaintiffs did not require their employees to sign any kind of non-compete or confidentiality agreement (Doc. 36 ¶ 21, uncontroverted). Nevertheless, plaintiff Patino testified at her deposition that she considered everything on the menu at the Vargas to be a secret (Doc. 36 ¶ 23, uncontroverted). On the other hand, Patino also testified that she never actually told the employees that she considered everything on the menu to be a secret because she did not think it was necessary (Id., uncontroverted).

Carment Montoya and Eugenio Garcia were two cooks (out of a total of three) at the Vargas during the time plaintiffs owned the restaurant but before defendant opened the La Hacienda. Plaintiffs contend defendant targeted her hiring efforts at plaintiffs' cooks and was ultimately successful in hiring Montoya and Garcia (Doc. 22 at 3–4; Doc. 36 ¶ 12, uncontroverted). Defendant, however, claims Montoya quit his job at the Vargas after plaintiff Vasquez would not give him time off to see his mother, who was having an operation. Defendant contends that prior to his quitting the Vargas, neither she, nor her parents asked Montoya to work for the La Hacienda (Doc. 44 ¶ 61). Plaintiffs argue that by hiring away two of their three cooks, defendant was able to obtain trade secret information regarding the preparation and presentation of the Vargas's menu items (Doc. 22 at 3).

On or about April 22, 1999, before defendant opened the La Hacienda, plaintiffs' attorney sent Montoya and Garcia letters which informed the two cooks: "Please be aware that the recipes that were used by the Vargas Restaurant in the preparation of some of its menu items are trade secrets of the Vargas Restaurant. What this means is that you are not allowed to use the knowledge that you possess regarding those recipes for your new employer. If your new employer wants you to prepare recipes that are the same or substantially similar to those recipes of Vargas Restaurant, you may be in violation of trade secret laws." (Doc. 38 ¶ 61 and defendant's response).

The next day, plaintiffs' attorney sent defendant and her parents a letter stating that plaintiffs were claiming trade secrets in the preparation of their recipes: "During the period of time that Mr. Vazques [sic] has been operating the Vargas Restaurant, he has prepared a number of menu items that represent a unique combination and preparation of certain types of food that are unique to the Vargas Restau-

---

9. The fact that plaintiff sued defendant is uncontroverted and supported by citation to the affidavit of Irma Ybarra. No details of this prior lawsuit were provided to the court and a search of the records of the district court in Seward County revealed nothing.

rant within the Liberal, Kansas trading area. The exact nature of the preparation of those menu items is a trade secret that brings economic value to Mr. Vazques [sic]. [You] have arranged to hire at least two key employees from Mr. Vazques [sic]. Mr Vazques [sic] would like to alert [you] to the fact that this information is a trade secret so that [you] may avoid any misappropriation of such or similar trade secrets belonging to Mr Vazques [sic]." (Doc. 38 ¶ 62 and defendant's response).[10]

### ANALYSIS

### A. Copyright

Plaintiffs claim defendant infringed their copyrighted menu (Vargas Menu # 2) in violation of 17 U.S.C. § 101 *et seq.*, by her creation and use of the sequential La Hacienda menus (Doc. 22 at 3). Defendant denies the claim, basing her argument on two premises. First, she argues the menu lacks originality because it was her parents who created most of the menu items in question. Next, she argues that to the extent plaintiffs claim she copied menu items which they added to the menu after their purchase of the Vargas, those menu items are "generic," that is, customarily used and associated with the sale of authentic Mexican food and, as a result, not copyrightable.

In order to establish copyright infringement, a plaintiff must prove (a) ownership of a valid copyright, and (b) copying of constituent elements of the work in question which are original. *See Feist Publications, Inc. v. Rural Telephone Serv. Co., Inc.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991). Plaintiffs'

possession of a valid copyright of Vargas Menu # 2 does not end the inquiry. The second element of an infringement claim, copying, must be satisfied. "The second element requires [the court] to consider two distinct issues. First, [it] must determine whether, as a factual matter, the defendant copied plaintiff[s'] work. Second, as a mixed question of law and fact, [it] must evaluate whether the elements copied by the defendant are protected by copyright." *Mitel, Inc. v. Iqtel, Inc.,* 124 F.3d 1366, 1370 (10th Cir.1997) (footnote and internal citations omitted). Even if defendant were to concede actually physically copying Vargas Menu # 2, liability will only attach if she copied elements protected by the statute. *See id; Country Kids 'N City Slicks, Inc. v. Sheen,* 77 F.3d 1280, 1284 (10th Cir.1996) ("[L]iability for copyright infringement will attach only where *protected* elements of a copyrighted work are copied.") (emphasis added).

The relevant inquiry is whether there exists a substantial similarity between those aspects of Vargas Menu # 2 and La Hacienda Menu # s 2 and 3 which are legally protectable.[11] To make such an inquiry, the Tenth Circuit has directed the court to employ the "abstraction-filtration-comparison" test. *See id.* at 1284–85 & n. 5 (employing test in a non-computer software case). This test is summarized as:

> At the abstraction step, [the court] separate[s] the ideas (and basic utilitarian functions), which are not protectable, from the particular expression of the work. Then [the court] filter[s] out the nonprotectable components of the product from the original expression. Final-

---

**10.** Defendant objects to the admission of both letters because the letter is not listed in the Pretrial Conference Order and plaintiffs' attorney is not listed as a witness.

**11.** La Hacienda Menu # 1 was in use for a one week period prior to the effective date of

the copyright of Vargas Menu # 2. In any event, for the same reasons the court finds La Hacienda Menu # 3 did not copy protectable elements of Vargas Menu # 2, the court also finds the same with respect to La Hacienda Menu # 1.

ly, [the court] compare[s] the remaining protected elements to the allegedly copied work to determine if the two works are substantially similar.

*Id.* at 1284–85. The Tenth Circuit has made clear, however, that the abstraction-filtration test "excludes from protection expression that is in the public domain, otherwise unoriginal, or subject to the doctrines of merger and scenes a faire." *Mitel,* 124 F.3d at 1372.

The court, for purposes of the instant motions for summary judgment, need not perform an extensive step-by-step analysis of the similarities and differences between the menus. *See id.* ("Not every case requires an extensive abstraction-filtration comparison analysis."). Rather, "the appropriate test to be applied and the order in which its various components are to be applied ... may vary depending upon the claims involved, the procedural posture of the suit, and the nature of the [works] at issue." *Gates Rubber Co. v. Bando Chem. Indus., Ltd.,* 9 F.3d 823, 834 n. 12 (10th Cir.1993).

Because a particular work is copyrighted does not mean that every element of it is copyrightable. *See Rogers v. Koons,* 960 F.2d 301, 307 (2nd Cir.1992). At the "cornerstone" of the Copyright Act is that the work protected must be original. *See id.* (citing *Feist,* 499 U.S. at 345–46, 111 S.Ct. at 1287–88 (stating that the originality requirement is constitutionally mandated)). Thus, copyright protection extends only to those components of a copyrighted work that are original to the creator. *See id.* To be original, the component must have been independently created by the author and possess at least some minimal degree of creativity. *See Feist,* 499 U.S. at 345, 111 S.Ct. at 1287. Obviously the idea of a menu is not protectable at the abstraction step. The descriptions of the various dishes are non-protectable components.

After all, a taco is a taco-the customer is entitled to know what he is ordering.

With this in mind, the court will proceed with an analysis of the various components of Vargas menu # 2 to determine if such component are protected in the first place. Only for those components the court determines are protected will the court then determine whether a reasonable fact-finder could find a substantial similarity between Vargas Menu # 2 and the La Hacienda Menu # s 2 and 3.

### 1. Menu Items From Vargas Menu # 1

■ Defendant argues that plaintiffs do not have a copyrightable interest in the twelve menu items which originated in Vargas Menu # 1 because her parents were the creators of those items. Copyright protection extends only to those components of a copyrighted work that are original to the creator. *See Rogers,* 960 F.2d at 307. In *Feist,* the Supreme Court stated that

> [t]he *sine qua non* of copyright is originality. To qualify for copyright protection, a work must be original to the author. Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.

*Feist,* 499 U.S. at 345, 111 S.Ct. at 1287 (internal citations omitted). *See also CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.,* 97 F.3d 1504, 1516 (1st Cir.1996) (finding employment metaphor of radio station promotion not protectable, although plaintiffs copyrighted a brochure using such metaphor, because plaintiffs borrowed metaphor from another source). "Fundamentally, the work must be the original product of the claimant." *Fred*

*Riley Home Bldg. Corp. v. Cosgrove,* 864 F.Supp. 1034, 1037 (D.Kan.1994).

▮ Plaintiffs respond that the contract of sale between themselves and defendant's parents transferred a copyrightable interest in the twelve menu items contained in Vargas Menu # 1 (Doc. 38 at 26). But as defendant points out, the Ybarras never copyrighted their menu, and thus, a transfer of the copyright could not have taken place upon the sale of the Vargas restaurant. *Cf. Peter Pan Fabrics, Inc. v. Rosstex Fabrics, Inc.,* 733 F.Supp. 174, 177–78 (S.D.N.Y.1990) (finding transfer of copyright interest need not be in writing because transfer was of uncopyrighted work and claimants copyrighted a derivative work).[12] The twelve menu items were not created by plaintiffs and therefore, are not copyrightable because the twelve menu items lack originality.[13] *See* 17 U.S.C. § 103(b) (copyright in derivative work extends only to material contributed by author and not to preexisting material).

### 2. The Additional Menu Items

It is uncontroverted that, after their purchase of the Vargas Restaurant, plaintiffs increased the number of menu items from the original twelve to over one hundred listed in Vargas Menu # 2. After defendant opened her restaurant, her menus also included offerings above and beyond what was originally offered at the Vargas at the time her parents owned and operated it. In fact, many of the new additional menu items included on the La Hacienda's menus closely resemble the menu items plaintiffs included on their Vargas Menu # 2. However, defendant argues that these too are uncopyrightable because they lack creativity and are mere uncopyrightable ideas or facts.

As stated above, to be original, the component must have been independently created by the author and *possess at least some minimal degree of creativity. See Feist,* 499 U.S. at 345, 111 S.Ct. at 1287. If the court were to allow plaintiffs a copyrightable interest in all of the individual menu items, it would be effectively allowing plaintiffs a monopoly on the serving of several popular Mexican dishes. *See, e.g., Oriental Art Printing, Inc. v. Goldstar Printing Corp.,* No. 00 CIV 8374 AGS, 2001 WL 460950 at *4 (S.D.N.Y. May 2, 2001) (refusing to find originality in photographs of commonly served Chinese dishes because to do so would effectively permit copyright holders monopoly in menus with pictures of such dishes). This the court is not able, nor willing to do. A key tenet of copyright law is that "[i]nfringement is shown by a substantial similarity of *pro-*

---

**12.** Defendant also argues that any transfer of plaintiffs' claimed copyright interest in the twelve menu items is invalid because the transfer was not reduced sufficiently to writing as required under 17 U.S.C. § 204(a). However, because her parents never copyrighted their menu, section 204 is inapplicable and her argument is without merit. *See Peter Pan,* 733 F.Supp. at 177–78. Furthermore, section 204(a) is in the nature of the Statute of Frauds and, like the Statute of Frauds, "was intended to resolve disputes between owners and alleged transferees, and was not intended to operate for the benefit of a third-party infringer when there is no dispute between the owner and transferee." *Great Southern Homes v. Johnson & Thomp-*

*son Realtors,* 797 F.Supp. 609, 611 (M.D.Tenn.1992). Although there is a strong relationship between defendant and the transferees, she being their daughter and, for all practical purposes, business partner, she was not a party to the contract for the sale of the Vargas Restaurant and cannot claim section 204(a) as a defense.

**13.** This, of course, does not prevent the Vargas Menu # 2 as a whole, although it includes the twelve menu items at issue, from being copyrightable as a derivative work under 17 U.S.C. § 103 because of the substantial changes plaintiffs made to Vargas Menu # 1. *See Fred Riley,* 864 F.Supp. at 1037 (discussing derivative works).

*tectable expression,* not just an overall similarity between the works." 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.03[F], at 13–124 (1995) (footnote omitted). The court is mindful, however, that the Supreme Court has made the threshold for creativity very low. As the Court explained in *Feist:*

> To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily as they possess some creative spark, no matter how crude, humble or obvious it might be....

*Feist,* 499 U.S. at 345, 111 S.Ct. at 1287 (internal quotation omitted).

For instance, in *Country Kids 'N City Slicks, Inc. v. Sheen,* 77 F.3d 1280 (10th Cir.1996), the Tenth Circuit affirmed the district court's finding that the size, shape and medium of the plaintiff's wooden paper dolls were uncopyrightable. *See id.* at 1287. The plaintiff copyrighted a wooden doll, in the shape of a common paper doll, on which paper clothing could be attached. Because the dolls were made of wood, the clothing was better able to stay on. *See id.* at 1283. The defendant, a former employee of plaintiff, created and marketed her own wooden dolls, also in the shape of a paper doll. *See id.*[14]

Although the issue of whether the distinct facial features, the nose, eyes and mouth, were copyrightable was not an appealed issue, the plaintiff asserted the district court erroneously found the size, shape and medium of the dolls to lack the requisite creativity. *See id.* at 1286. The Tenth Circuit, however, affirmed the district court's findings, concluding that the "idea" of a wooden doll in the shape of the common paper doll, was uncopyrightable. *See id.* at 1285–86. The court explained

that "Plaintiffs cannot demonstrate infringement merely because Defendants produced wooden paper dolls; nor may they rely on similarities between their work and Defendants' work that necessarily stem from this unprotectable idea." *Id.* at 1286 (citing cases). *See also Mitel, Inc. v. Iqtel, Inc.,* 124 F.3d 1366, 1373–74 (10th Cir.1997) (finding numbers of command codes, code registers and descriptions, and values of call controllers not afforded copyright protection because of lack of creativity in creation of such numbers and descriptions).

By that same token, the "idea" of serving, at a Mexican theme restaurant, three tacos along with a side of rice and beans, is not copyrightable. Labeling the dish as "Three Meat Tacos" is not copyrightable because such a label stems from the idea of serving three tacos. It is undebateable that defendant is allowed to serve three meat tacos on the same plate as a serving of rice and beans. She did not need to invent some creative name for the dish simply because plaintiffs were first, at least with respect to the two restaurants involved in the instant litigation, to label their dish "Three Meat Tacos."

However, in accordance with the Supreme Court's pronouncement of the minimal threshold requirement of creativity to afford an item copyright protection, the court will find that a trial issue remains to the protectable interest in those dishes which may have a slight "creative spark." The court has identified the possible dishes by (1) eliminating from Vargas Menu # 2 any dish which was listed on Vargas Menu # 1 (e.g., the Durango dinner) and (2) selecting any remaining dishes listed on Vargas Menu # 2 which may have a sufficient creative aspect and thus, arguably, are

---

**14.** Incidentally, the plaintiff also complained that the defendant "lured" away two of its sales representatives and that some customers could not differentiate between the two brands of dolls. *See id.*

entitled to copyright protection: Don Libra, Fiesta Plate, Jairitos Plate, Tampiquena, Bandera, Luisita, Don Layo, and Anitas.

Summary judgment may still be granted, however, if the court finds no reasonable fact-finder would find a "substantial similarity" between the above-mentioned menu items on Vargas Menu # 2 and menu items on La Hacienda Menu # s 2 and 3. *See Country Kids,* 77 F.3d at 1284. According to the Tenth Circuit:

> The traditional test for substantial similarity is "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value." *Atari[, Inc. v. North Am. Philips Consumer Electronics Corp.,* 672 F.2d [607,] 614 [ (7th Cir.1982) ] (citation omitted). The essence of this test is whether the "ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Peter Pan Fabrics[, Inc. v. Martin Weiner Corp.],* 274 F.2d [487,] 489 [ (2nd Cir.1960) ]. The touchstone of the analysis is the "overall similarities rather than the minute differences between the two works." *Atari,* 672 F.2d at 618.

*Id.* at 1288.

Plaintiffs may not claim a monopoly on the combination of items themselves. The words used to describe a dish are not protected under the *scenes a faire* doctrine.[15] Furthermore, the description of a meal lacks creativity and only serves the purely utilitarian purpose of describing what food items come with the plate. *See*

*Country Kids,* 77 F.3d at 1287 (finding shape of human body of doll serves a utilitarian purpose and therefore is not protected by Copyright Act).

This leaves for consideration the names assigned to the dishes. On Vargas Menu # 2, the dish is call the "Tampiquena." On La Hacienda Menu # s 2 and 3, it is the "Oxakuena." Even if it is assumed, for purposes of discussion, that plaintiffs have a protectable interest in the name "Tampiquena," a copyright violation could occur only if an ordinary observer would find a substantial similarity between the words "Tampiquena" and "Oxakuena." Thus, although there is identity in terms of food items between plaintiffs' "Don Libra" and defendant's "Don Pancho;" the "Fiesta Plate" and the "Rodeo Plate;" the "Jairitos Plate" and "Layito's Plate;" the "Bandera" and "Monterry's Plate;" the "Luisita" and "Delicias Plate;" and the "Don Layo" and the "Saltillo Plate," there is not a sufficient similarity between the assumed protectible elements of those plates (i.e., the names) to prevent summary judgment.

### 3. The Order of the Menu Items

Plaintiffs argue that even if the individual menu items are not, by themselves, protected, the compilation of the items is. Plaintiffs analogize the facts of this case to the circumstances presented to the Supreme Court in *Feist.*

*Feist* involved a public telephone service provider's copyright claim against a private publisher of telephone directories. *See Feist,* 499 U.S. at 343–44, 111 S.Ct. at 1286–87. The plaintiff claimed that after it refused a license to the defendant to reprint its white page listing, the defendant still did so, resulting in 1,309 of defen-

---

**15.** "Under the *scenes a faire* doctrine, expressive elements of a work of authorship are not entitled to protection against infringement if they are standard, stock, or common to a topic, or if they necessarily follow from a common theme or setting." *Mitel,* 124 F.3d at 1374 (citations omitted).

dant's 46,878 listings to be identical to the plaintiff's listings. *See id.* The defendant argued the individual listings were "facts" and, as such, not copyrightable. *See id.* at 344, 111 S.Ct. at 1287.

The Court began its opinion by a statement of two established propositions: "The first is that facts are not copyrightable; the other, that compilations of facts generally are." *Id.* However, although the selection or arrangement of facts may be granted copyright protection, the Court made clear that originality is a constitutionally mandated prerequisite for such protection. *See id.* at 351, 111 S.Ct. at 1282.. Thus, to be a protectable element of the copyrighted work, the compilation must have been the result of a "a modicum of intellectual labor" to satisfy the creativity requirement. *Id.* at 347, 111 S.Ct. at 1288 (quoting Nimmer § 1.08[C][1] ). The Court explained that:

originality is not a stringent standard; it does not require that facts be presented in an innovative or surprising way. It is equally true, however, that the selection and arrangement of facts cannot be so mechanical or routine as to require no creativity whatsoever. The standard of originality is low, but it does exist.... As this Court has explained, the Constitution mandates some minimal degree of creativity, ... and an author who claims infringement must prove the existence of ... intellectual production, of thought, and conception.

*Id.* at 362, 111 S.Ct. at 1296 (citations omitted). Finding the plaintiff's method of arranging its white pages alphabetically by surname "so commonplace that it has come to be expected as a matter of course," the Court held the compilation of the names unprotected by the Copyright Act. *See id.* at 363, 111 S.Ct. at 1297.

The compilations issue is important with respect to the order of the menu items offered under the "Seafood," "Children

Dinner," and "A La Carta" sections of Vargas Menu # 2 and La Hacienda Menu # 2. From a side-by-side comparison of the two menus, the court finds that a reasonable fact-finder could find substantial similarity. Thus, the question to be asked is whether the order plaintiffs chose to list their menu offerings under these three sections required the requisite level of creativity. Were the three sections the result of intellectual production, thought and conception?

Once again, the threshold of creativity is low and, unlike the alphabetical listing in *Feist,* the order of the menu items cannot be said to be so commonplace as to be expected. For purposes of summary judgment, the court must assume plaintiffs used a "modicum of creativity" in deciding to offer the "Mojarra Fried" before the "Fish Fried," or the children's tostada in between the burrito and flauta. The issue of whether creativity was used to create the order of the items offered is one to be left for trial.

### 4. Overall Layout of the Menus

█ Even if each of the individual components of plaintiffs' menu was determined to be unprotectable, the menu as a whole could fall under the protection of the Copyright Act. *See, e.g., CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.,* 97 F.3d 1504, 1521 (1st Cir.1996) (affirming district court's finding that although individual phrases in plaintiff's brochure were unprotected, brochure as whole, including its graphical arrangement, was protected). *See also Oriental Art Printing, Inc. v. Goldstar Printing Corp.,* No. 00 CIV 8374 AGS, 2001 WL 460950 at *4 (S.D.N.Y. May 2, 2001) (finding that although individual pictures of food were unprotected by Copyright Act, overall design of menu in which photographs are contained was). Because the overall layout of plaintiffs'

Vargas Menu # 2 is copyrightable, the issue is whether a reasonable fact-finder could find a substantial similarity between the overall design of La Hacienda Menu # s 2 and 3. *See Country Kids 'N City Slicks, Inc. v. Sheen,* 77 F.3d 1280, 1288 (10th Cir.1996) (stating substantial similarity test as to protectable elements of copyrighted material).

Comparing Vargas Menu # 2 with La Hacienda Menu # 2, a substantial similarity between the overall layouts could be found by a reasonable fact-finder. Both are white menus of the same size. Each consists of one large paper has been vertically folded once. The front cover of Vargas Menu # 2 is a colorful painting, taking up most of the space. The words "Vargas Restaurant" and "The Best Mexican Food" appear on the drawing. By contrast, the front cover of La Hacienda Menu # 2 consists of a smaller, black and white photograph of a man and woman. The phrases "La Hacienda Restaurant" and "Specializing in Authentic south of the border food" are situated in the space outside of the photograph.

Both inside pages and the back page are filled with the various menu items. For the most part, two columns of menu items exist on all pages. The columns and margins appear the same size. The headings of the various sections are in red. The name of each menu item is in black, located on the left margin of the column. Located on the same line, with a right margin justification is the price. Any space between the name of the menu item and the price is separated by several periods. Directly underneath the name and price of each menu item is a two to four line description of the menu item. On Vargas Menu # 2, the description is in blue. On La Hacienda Menu # 2, the description is in green. On both menus, the description is slightly indented. The court finds there remains a material issue of fact as to the similarities between the overall layouts of Vargas Menu # 2 and La Hacienda Menu # 2.

A glance at the layouts of the two menus could cause a reasonable fact-finder to find a substantial similarity in their presentation. By contrast, the court finds no reasonable fact-finder would find a substantial similarity between the overall layouts of Vargas Menu # 2 and La Hacienda Menu # 3. Although La Hacienda Menu # 3 is of the same paper size and is also folded once vertically, such a characteristic by itself is common to many menus and is unprotected. *See CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.,* 97 F.3d 1504, 1519 n. 17 (1st Cir.1996) (finding 8½″ X 14″ size, folds, and horizontal layout with a vertical 3″ serrated entry form uncopyrightable as standard features of direct mail brochure). La Hacienda Menu # 3 does not have a picture on its front cover. On its inside pages and back page, the menu offerings are located within a red and gold border. Vargas Menu # 2 has no border. On La Hacienda Menu # 3 the menu sections are labeled with black letters located in gold, ornate boxes. The menu selections are all in one color, black, and the descriptions of the menu items are not indented. The space between the menu item name and the price is not filled with several periods, but with blank space. Thus, under the ordinary observer test, the court finds no reasonable fact-finder would find a substantial similarity between the two menus and summary judgment is granted with respect to the overall layout of La Hacienda Menu # 3.

In summary, trial issues remain on plaintiffs' copyright claim with respect to (1) the order of menu items under the seafood, children dinner and a la carta sections and (2) the overall layout of the menus. The court, however, limits the claims to La Hacienda Menu # 2.

### B. Misappropriation of Trade Secrets

■ Defendant next moves for summary judgment on plaintiffs' state claim for unfair competition by misappropriation of trade secrets. Defendant argues (1) plaintiffs failed to specify exactly what the alleged "trade secrets" are; (2) in any event, they failed to take reasonable steps to protect any such secrets; and (3) any information she (defendant) did obtain was not the result of "misappropriation" as that term is contemplated under the Kansas Statute. The court agrees that defendant's hiring of two former cooks of plaintiffs' restaurant is not sufficient to sustain a claim for unfair competition and grants plaintiff summary judgment on that claim.

■ Plaintiffs claim their trade secrets include "recipes; methods of preparing recipes, identity of suppliers; types and quantities of supplies required for preparation of menu items; quantity and timing of ordering of specific supplies; specific needs and wants of Vargas Restaurant patrons; [and] timing of preparation of specific menu items based on Vargas Restaurant patronage demands." (Doc. 38 at 32). Under K.S.A. 60–3320(4), a "trade secret" is defined as:

information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and

(ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Although plaintiffs are correct in arguing that normally the type of information available for trade secret protection is a question of fact, plaintiffs have presented absolutely no evidence of any type of effort undertaken to protect the secrecy of the information until after the cooks had left their employment.

Furthermore, summary judgment is proper because plaintiffs have failed to show misappropriation. Under K.S.A. 60–3320(2), "[m]isappropriation occurs when there is acquisition of a trade secret by improper means or when there is improper disclosure or use of a trade secret by another without express or implied consent." *Curtis 1000, Inc. v. Pierce*, 905 F.Supp. 898, 902 (D.Kan.1995). The deficiency with plaintiffs' claim is that nothing was taken, nor disclosed by any *improper* means. "Improper means" is defined, by statute, as including "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." K.S.A. 60–3320(1).

From plaintiffs' brief, it appears as though they contend their former employees, Montoya and Garcia, breached a duty to them by going to work for defendant and divulging all of the information plaintiffs now claim were "trade secrets." The problem with their contention is that plaintiffs failed to require their employees to sign any type restrictive covenant, confidentiality agreement or contract to not compete. Plaintiffs' after-the-fact attempt to inform both defendant and the two cooks that practically all information Montoya and Garcia learned as a result of their employment at the Vargas were now deemed "trade secrets" is simply not enough to transform defendant's perfectly legal hiring of two experienced workers into "improper means" within the meaning of the statute.

The Kansas Supreme Court may have considered a claim, such as plaintiffs, appropriate in *Koch Engineering Co., Inc. v. Faulconer*, 227 Kan. 813, 610 P.2d 1094 (1980), but the facts in that case differ significantly from the circumstances pres-

ent here.[16] In affirming the district court's granting of a permanent injunction against the former employee's use of trade secrets, the court relied on the fact that not only had the employee signed a non-compete agreement, for which he was paid valuable consideration, but also that every piece of informational material provided to him during his employment was plainly marked "confidential." *See id.* at 817–19, 601 P.2d at 1098–99. The employer, Koch, even circulated a conflict of interest memorandum stating specifically that the employees' duty to not disclose confidential information was an express condition of continued employment. *See id.* at 817, 601 P.2d at 1098. The agreement between the employer and employee was obviously a key component of the claim.

Such an agreement between plaintiffs and their cooks is lacking here and the court cannot find that Kansas courts would allow plaintiffs more relief without the agreement than they would with an agreement.

Plaintiffs concede that "[t]he cooks are certainly entitled to use the knowledge and information they possessed regarding cooking, including skills obtained from any training provided by Plaintiffs; but not trade secrets." (*Id.* at 34). The court, after looking at the list of information plaintiff claim as secrets, wonders what type of "knowledge" is left. Indeed, if Montoya and Garcia are prohibited from using the claimed trade secrets, they would, for all practical purposes, be prohibited from working in the Mexican restaurant industry. If, instead of claiming, after the fact, trade secrets, plaintiffs had instead made the same prohibitions in a pre-employment covenant not to compete, the Kansas courts would strike the agreement as unreasonable and would not allow plaintiffs to recover under a breach of

contract claim. It only logically follows, then, that Kansas courts would not allow plaintiffs to instead recover under a tort theory of misappropriation because they later claim "trade secrets."

Under Kansas law, a restrictive covenant which is ancillary to an employment contract is only enforced if it protects a legitimate business interest. *See Weber v. Tillman,* 259 Kan. 457, 462, 913 P.2d 84, 89 (1996). If the sole purpose is to avoid ordinary competition, it is unreasonable and unenforceable. *See id.* Furthermore, to be enforceable, the covenant must contain area and time limitations which are reasonable under the facts and circumstances of the particular case. *See H & R Block, Inc. v. Lovelace,* 208 Kan. 538, 544, 493 P.2d 205 (1972). The issue of reasonableness is a question of law. *See Puritan–Bennett Corp. v. Richter,* 235 Kan. 251, 254, 679 P.2d 206, 210 (1984). If plaintiffs were allowed to pursue a claim for misappropriation of trade secrets, they would, in effect, be allowed a restrictive covenant-type of relief without any limitations as to area or time.

Also, Kansas courts have struck restrictive covenants which are too general as to the type of information prohibited from being utilized. *See, e.g., id.* at 257, 679 P.2d at 211. In *Puritan–Bennett,* the court found unenforceable a restrictive covenant which prohibited the employee from using "trade secret" information the court found too general. *See id.* at 256–57, 679 P.2d at 210–11. The court reasoned that enforcing the agreement "would virtually bar [the former employee] from the practice of his profession" and would "unreasonably infringe upon [his] right to earn a living." *Id.* at 257, 679 P.2d at 211. *See also Great Lakes Carbon Corp. v. Koch Indus.,* 497 F.Supp. 462, 471

---

16. *Faulconer* was decided prior to the enactment of the Uniform Trade Secrets Act. *See* 227 Kan. at 826, 610 P.2d at 1104 (citing Rest. of Torts § 757 (1939)).

(S.D.N.Y.1980) (The definition of "[trade] secrets so as to include information of every kind obtained by the employee is absurd.") *quoted in Puritan–Bennett,* 235 Kan. at 256, 679 P.2d at 211.

If plaintiffs had sought, at the time of hiring Montoya and Garcia, a confidentiality agreement or restrictive covenant which stated terms they seek to enforce through their misappropriation claim, the court could not find the agreement reasonable and enforceable as a matter of law. The "trade secret" information is too general. There is no limitation as to time or geographic area and allowing the cause of action to proceed prevents Montoya and Garcia from working in the Mexican restaurant industry. Unlike the cases involving hiring agreements, Montoya and Garcia never agreed to keep the skills and information learned confidential, *see Weber v. Tillman,* 259 Kan. 457, 462, 913 P.2d 84, 89 (1996) ("The rationale for enforcing a noncompetition covenant is based on the freedom of contract."), and they did not receive anything in consideration for such an agreement, *see Evco Distributing, Inc. v. Brandau,* 6 Kan.App.2d 53, 58, 626 P.2d 1192 (1981) (stating that consideration is necessary for enforcement of restrictive employment covenant). Plaintiffs cannot obtain through a tort theory of action what they could not have obtained through contract.

### C. Lanham Act Unfair Competition Claim

██ Plaintiffs claim unfair competition under the Lanham Act, 15 U.S.C. § 1125(a) for defendant's alleged trade dress infringement (Doc. 22 at 9–11). From the Pre-trial Order, it is apparent plaintiffs claim a trade dress in Vargas Menu # 2 and that defendant's copying of the menu violated section 43(a) of the Lanham Act. It is well settled that "[a] federal cause of action for unprivileged imitation, including trade dress infringement, is available under section 43(a) of the Lanham Act." *Hartford House, Ltd. v. Hallmark Cards, Inc.,* 846 F.2d 1268, 1271 (10th Cir.1988). *See also Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 776, 112 S.Ct. 2753, 2761, 120 L.Ed.2d 615 (1992) (Stevens, J., concurring) ("[T]he Supreme Court interprets this section [§ 43(a)] as having created a federal cause of action for infringement of unregistered trademark or trade dress and concludes that such a mark or trade dress should receive essentially the same protection as those that are registered.").

The term "trade dress" represents those features comprising a product's look or image. *See Vornado Air Circulation Systems, Inc. v. Duracraft Corp.,* 58 F.3d 1498, 1502 (10th Cir.1995). A plaintiff, to establish a claim for trade dress infringement under section 43(a), must prove (1) that the design of the product is either inherently distinctive or has developed a "secondary meaning;" [17] and (2) there is a likelihood of confusion between the plaintiffs' and defendant's respective products. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 769, 112 S.Ct. 2753, 2758, 120 L.Ed.2d 615 (1992); *Hartford House Ltd. v.Hallmark Cards, Inc.,* 846 F.2d 1268, 1271 (10th Cir.1988). Defendant argues plaintiffs can prove neither element because (1) the menu is not protectable under section 43(a); and (2) even if the menu does come under the ambit of the Lanham Act's protection, plaintiffs fail to show any customer confusion. The court is not per-

---

**17.** To establish secondary meaning, a plaintiff must show that, "in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather the product itself." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 851 n. 11, 102 S.Ct. 2182, 2187 n. 11, 72 L.Ed.2d 606 (1982).

suaded and will address both arguments in turn.

For an unregistered mark (in this case, plaintiffs' menu) to be entitled to protection under section 43(a), the product must be eligible for registration under the Lanham Act. See Two Pesos, 505 U.S. at 768, 112 S.Ct. at 2757. In order to be eligible, the product or mark must be capable of distinguishing the plaintiffs' product from those of others. See id. Defendant argues this distinctiveness is lacking from plaintiffs' menu because the names of the menu items are "generic" and thus not afforded trade dress protection. To the extent the names could be labeled "descriptive," defendant argues plaintiff fails to establish a secondary meaning.

The "generic" and "descriptive" classifications defendant speaks of refer to the classic and oft-followed formulation first posited by Judge Friendly in Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4 (2nd Cir.1976). According to the formulation, marks are classified into one of five categories of increasing distinctiveness: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful. See id. at 9. If the mark is classified into one of the three latter categories, it is deemed inherently distinctive and entitled to protection. See Two Pesos, 505 U.S. at 768, 112 S.Ct. at 2757. By contrast, if it is one considered generic, the mark is not registerable. See id. A descriptive mark is not inherently distinctive, but is protectable if it has developed a "secondary meaning." See id. at 769, 112 S.Ct. 2757. See also Beer Nuts, Inc. v. Clover Club Foods Co., 711 F.2d 934, 939 & n. 5 (10th Cir.1983) (citing Abercrombie & Fitch).[18]

Defendant's argument focuses on the individual menu items. Although individualized attention to each element of the menu was appropriate under the copyright claim, the court, for purposes of the trade dress claim, must instead focus on the menu as a whole. "[T]he proper inquiry is not whether individual features of a product are functional or non-distinctive but whether the whole collection of features taken together are functional or nondistinctive." Kendall–Jackson Winery Ltd. v. E. & J. Gallo Winery, 150 F.3d 1042, 1050 (9th Cir.1998). See also August Storck K.G. v. Nabisco, Inc., 59 F.3d 616, 620 (7th Cir.1995) ("Doubtless the overall appearance is what matters. . . . Dissecting a product or package into components can cause a court to miss an overall similarity."). "A defendant cannot avoid liability for unfair competition simply by segregating out the various aspects of plaintiff[s'] product, packaging and labels and claiming that no one of these is protectable in an of itself. It is the total combination of elements that is at issue." J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 8.2 (2000); Hartford House, Ltd. v. Hallmark Cards, Inc., 846 F.2d 1268, 1272–73 (10th Cir.1988) (focusing on combination of product's features, rather than individual elements).

Viewing plaintiffs' Vargas Menu # 2 as a whole, the court cannot find that it is merely "generic" or "a particular genus or class of which an individual article or service is but a member." Beer Nuts, Inc. v. Clover Club Foods Co., 711 F.2d 934, 939 (10th Cir.1983). Nor does the court find the menu, as a whole, "descriptive" or one

---

**18.** This is not a case in which a product design is alleged to have been infringed and therefore the Supreme Court's recent decision in Wal–Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000) is inapplicable. Wal–Mart held that a product's design is distinctive only

upon a showing of secondary meaning. See id. at 215, 120 S.Ct. at 1346. Rather, the menu in this case is akin to the restaurant decor in Two Pesos, a "tertium quid" the Court found similar to product packaging. See id. at 215, 120 S.Ct. at 1345.

that "conveys an immediate idea of the ingredients, qualities or characteristics of the goods." *Id.* at 939 n. 5. The court would not go so far as to describe the menu as "fanciful" or "arbitrary," "bearing no relationship to the product or service with which [it is] associated." *Id.* at 939 n. 5. The menu, as a whole, does seem to convey a festive, Mexican flair to it. Accordingly, the court finds the menu "suggestive" because it "subtly connote[s] something about the product" and "requires imagination, thought and perception to reach a conclusion as to the nature of goods." *Id.* Thus, plaintiffs' menu is inherently distinctive and entitled to protection under section 43(a). *See Two Pesos,* 505 U.S. at 768, 112 S.Ct. at 2757. *Accord Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,* 826 F.2d 837 (9th Cir.1987) (holding restaurant's decor, menu, layout and style of service may acquire source-distinguishing aspects of protectable trade dress).

■■■ Defendant next argues that the second element of a trade dress claim, customer confusion, is absent.[19] In the Tenth Circuit, however, likelihood of confusion is a question of fact. *See Beer Nuts,* 805 F.2d at 923 n. 2. Thus, summary judgment should not be granted on the issue of customer confusion except in rare cases. *See Universal Money Ctrs., Inc. v. American Tel. & Tel. Co.,* 22 F.3d 1527, 1530 n. 2 (10th Cir.1994).

The Tenth Circuit has set forth six factors, all interrelated and none dispositive, to be considered in determining whether there is likelihood of confusion: "(a) the degree of similarity between the marks; (b) the intent of the alleged infringer in adopting its mark; (c) the relation in use and the manner of marketing between the goods or services marketed by the competing parties; (d) the degree of care likely to be exercised by purchasers; (e) evidence of actual confusion and (f) the strength or weakness of the marks." *First Sav. Bank, F.S.B. v. First Bank System, Inc.,* 101 F.3d 645, 652 (10th Cir.1996).

The parties' briefs focus only on the "actual confusion" factor, without discussing the other five. Plaintiffs offer their own affidavits stating that on numerous occasions they were asked if they owned or operated the La Hacienda restaurant. While recognizing that such statements are admissible, *see Heartsprings, Inc. v. Heartspring, Inc.,* 949 F.Supp. 1539, 1545 (D.Kan.1996), plaintiffs argue such evidence, standing alone, is insufficient to survive a motion for summary judgment. However, unlike the facts presented in *Heartsprings* and *First Savings Bank,* the court finds an issue of fact exists as to the first four factors, at least with respect to La Hacienda Menu # s 1 and 2. Thus, summary judgment must be denied. As for the third La Hacienda menu, the factors weigh in favor of granting summary judgment because there remains no similarity to plaintiffs' Vargas Menu # 2 and it is obvious defendant's intent was to change her menu to appear less like plaintiffs'.

As defendant submits, the Tenth Circuit does follow the rule that actual consumer confusion or deception resulting from the alleged violation is necessary for a plaintiff to recover damages. *See Brunswick Corp. v. Spinit Reel Co.,* 832 F.2d 513, 525 (10th Cir.1987). The court, however, disagrees with defendant that plaintiffs' failure to provide the court, at this stage in the litigation, with evidence of such confusion other than their own affidavit testimony merits summary judgment. First, plaintiffs seek injunctive relief as well as monetary damages. Second, actual consumer confusion may be shown by direct evi-

---

**19.** *See* Doc. 36 at 17 ("We are dealing with separate restaurants, with completely different names, located in two separate buildings. Regardless of whether the food tastes similar, how can anyone be confused about which restaurant he or she is dining at?").

dence, a diversion of sales, direct testimony from the public, or by circumstantial evidence. *See id.* Although plaintiffs' affidavit testimony may not be the most persuasive, it is sufficient. *See First Savings Bank, F.S.B. v. U.S. Bancorp,* 117 F.Supp.2d 1078, 1087–89 (D.Kan.2000) (discussing damages for trademark infringement). For purposes of summary judgment, actual damages is but one non-dispositive factor and this court finds that a material issue of fact exists.

### D. Plaintiffs' Motion For Summary Judgment

In responding to defendant's motion for summary judgment, plaintiffs produced a 46 page "Combined Opposition to Defendant's Motion for Summary Judgment and Plaintiff's [sic] Motion for Summary Judgment" (Doc. 38). Defendant objects to plaintiffs' motion for summary judgment as being out of time and in a format not in accordance with the rules. The court agrees with defendant that plaintiffs' "combined" brief made it "difficult to discern precisely which facts [they] rely on to support summary judgment, as opposed to those facts which they claim refute the specific arguments advanced by the defendant" and that "[t]he problem is carried over into the argument section, in which the arguments in support of summary judgment are interwoven with response to defendant's brief." (Doc. 44 at 2).

In any event, plaintiffs' motion is denied because, for the reasons stated above, material issues of fact remain with respect to those claims which have survived defendant's motion. *See Weese v. Schukman,* 98 F.3d 542, 547 (10th Cir.1996) (holding the standard for determining judgment as a matter of law is "particularly strict" when such a ruling is made in favor of the party with the ultimate burden of proof at trial). *See also United Missouri Bank v. Gagel,* 815 F.Supp. 387, 391 (D.Kan.1993).

### CONCLUSION

THEREFORE, IT IS ORDERED BY THE COURT that defendant's motion for summary judgment (Doc. 35) is DENIED as to plaintiffs' claims for copyright infringement and trade dress and GRANTED as to plaintiffs' claim for misappropriation of trade secrets. Plaintiffs' motion for summary judgment (Doc. 38) is DENIED.

A motion for reconsideration of this order is not encouraged. The parties shall have 10 business days after the filing of this order in which to file any motion for reconsideration. A response to such motion shall be filed 5 business days after the filing of such motion. No replies will be allowed. All motions and responses shall be limited to a maximum of 5 pages and shall strictly comply with the standards enunciated by this court in *Comeau v. Rupp,* 810 F.Supp. 1172, 1174 (D.Kan. 1992).

Counsel for the parties shall prepare and submit to this court a supplemental pretrial order reflecting the rulings of this order by July 30, 2001.

IT IS SO ORDERED.

# Vargas Restaurant

ESPECIAL VARGAS ............................................ 5.95
(2) dos tortillas de hanna/fritas en mantoca carne (molida), y frijoles, lechuga, tomate, y rajas de aguacate, y crema

FAJITAS DE RES O POLLO
Para 1 ............................................... 7.95
Para 2 ............................................... 15.00

ENCHILADAS DE CARNE (MOLIDA) O QUESO ............ 5.95
(3) tres enchiladas rellenas de carne (molida) o queso, banadas en mole, con queso amarillo o blanco

ENCHILADAS SUIZA'S ...................................... 6.95
Igual, ala orden de ariba, pero con crema

FLAUTAS DE POLLO ....................................... 5.95
(2) dos doble tortilla de maiz rellenas de pollo, lechuga al lado, y crema y guacamole

TACOS DE POLLO ......................................... 6.95
(3) tres tacos rellenos de pollo, lechuga, taco sauce, y queso amarillo, y blanco, crema y guacamole

SONORA ................................................... 6.95
(1) una enchilada de queso (1) una de carne (molida) un taco, arroz y frijoles refritos

TIJUANA .................................................. 6.95
(2) dos sopas ensalada de guacamole, y su salsa

TAMPICO ................................................. 6.95
(1) un sope de carne (molida) y frijoles, un burrito de carne (molida),una, flauta de carne (molida), una tostada de carne (molida) y frijoles, un dip de guacamole

GUADALAJARA ........................................... 6.95
(1) una flauta de carne (molida) un taco, un burrito de frijoles con queso, una tostada de carne (molida) y frijoles, y un dip de guacamole

CHIHUAHUA .............................................. 8.25
Bistec a la parrilla, papas fritas, pico de gallo, un dip de guacamole, frijoles, (3) tres tortillas de harina o maiz

MOJARRA FRITA ......................................... 6.50
Con papas fritas, pico de gallo un dip de guacamole, (3) tres tortillas de harina o maiz

PESCADO FRITO ......................................... 7.95
Con papas fritas, pico de gallo un dip de guacamole, (3) tres tortillas de harina o maiz

MENUDO .................................................. 4.95
(Viernes y Sabado)

ENSALADA DE GUACAMOLE ........................... 4.50
ensalada de guacamole, y su salsa

## BEBIDAS

MARGARTIA (Lg) ......................................... 3.50
CERVEZA ................................................. 2.00
SODAS .................................................... .85
un (1) refil gratis
CAFE O ICE TEA ......................................... .85

DEPOSITION EXHIBIT 2A

# Vargas Restaurant

VARGAS SPECIAL ......................................... 6.95
(2) Flour Tortillas (deep fried), Meat and Beans, Lettuce and slices of Tomato and Avacado, Dip of Sour Cream

ENCHILADAS SUIZA'S ................................... 6.95
(3) Enchiladas Meat or Cheese, with Gravy and Sour Cream, Lettuce Taco Sauce,Corn Chips and Hot Sauce

CHICKEN TACOS ......................................... 6.95
(3) Tacos filled with Chicken, covered with Sour Cream, Lettuce, Taco Sauce Small Dip of Guacamole, Corn Chips, Hot Sauce
With Flour Tortillas ................................ 6.95

CHICKEN FLAUTAS ...................................... 6.95
(2) Double Tortillas filled with Chicken, covered with Sour Cream, Lettuce, Taco Sauce, Small Dip of Guacamole, Corn Chips and Hot Sauce

QUESADILLAS ............................................ 5.95
(3) Flour Tortillas, Grilled with Cheese, Lettuce, Small Dip of Guacamole, Corn Chips and Hot Sauce

TACOS, ENCHILADAS OR TOSTADAS ................. 6.25
(3) Beef or Cheese Tacos, Enchiladas or Tostadas

BEEF OR CHICKEN FAJITAS
For 1 ................................................ 7.95
For 2 ................................................ 15.00

DURANGO
One Meat, One Cheese Chili Relleno, One Meat Taco, Rice and Refried Beans.

TIJUANA PLATE ......................................... 6.95
Two Sope, Guacamole Salad, Corn Chips and Hot Sauce

GUADALAJARA .......................................... 6.95
One Meat Flauta, One Meat Taco Beans and Cheese Burrito, One Meat and Bean Tostada, Small Dip of Guacamole

SONORA ................................................. 6.95
One Meat, One Cheese Enchilada, One Meat Taco, Rice and Refried Beans

TAMPICO ................................................ 6.95
One Meat and Bean Sope, One Meat Burrito, One Meat Flauta, One Meat and Bean Tostada, Small Dip of Guacamole

#1 ....................................................... 6.25
Meat Enchilada, Meat Taco, Meat and Bean Tostada

#2 ....................................................... 6.25
Bean and Cheese Burrito, Bean and Meat Tostada, Meat Taco

#3 ....................................................... 6.25
Meat Flauta, Bean and Cheese Burrito, Meat Taco

#4 ....................................................... 6.25
Two Meat Tacos, One Meat and Bean Tostada

## EXTRAS

Sour Cream ........................... 1.25
(3) Corn Tortillas .................... 1.00
(3) Flour Tortillas ................... 1.00
Order of Beans or Spanish Rice ....... 3.75
Guacamole Salad ..................... 4.50
(Only With Meals)

## BEVERAGES

MARGARITA (Lg) ...................... 3.50
BEER ................................. 2.00
SODAS ................................ 1.00
(One Free Refill)
COFFEE, ICED TEA .................... .85

EXHIBIT C

THE BEST MEXICAN FOOD

## VARGAS #2

**COMBINED FAJITAS**
WITH BEEF, CHICKEN AND SHRIMP
FOR ONE ........... $9.95
FOR TWO ........... $17.00

**PARRILLADA**
ANY MEAT WITH RANCHERO BEANS, PICO
DE GALLO AND GUACAMOLE DIP
FOR ONE ........... $9.95
FOR TWO ........... $17.00

**#30** ........... $5.95
(1) ENCHILADA, (1) TACO WITH BEANS AND RICE

**#31** ........... $5.95
(1) TACOS, (1) ENCHILADA WITH BEANS AND RICE

**#32** ........... $6.95
(1) TOSTADA, (1) BEEF CHILI RELLENO, (1) ENCHILADA WITH BEANS AND RICE

**#33** ........... $6.95
(1) CHEESE OR BEEF CHILI RELLENOS WITH BEANS AND RICE

**#34** ........... $6.95
(1) CHEESE TACO,(1) TACO (1)GUACAMOLE DIP, (1) TOSTADA, (1) ENCHILADA

**#35** ........... $6.95
(1) CHICKEN TOSTADA, (1) TACO, (1) MEAT FLAUTA, (1) BURRITO

**#36** ........... $6.95
(1) CHICKEN TACO WITH FLOUR TORTILLA, (1)ENCHILADA, (1)MEAT FLAUTA WITH BEANS AND RICE

**#37** ........... $6.95
(1) TOSTADA, (1)CHEESE TACO, (1) CHICKEN ENCHILADA WITH SOUR CREAM, BEANS AND RICE

**#38** ........... $6.95
(1) CHICKEN TACO WITH CORN TORTILLA, (1) TOSTADA, (1) CHEESE ENCHILADA WITH BEANS AND RICE

**#39** ........... $6.95
(2) CHICKEN ENCHILADAS WITH SOUR CREAM, (1) TACO WITH BEANS AND RICE

**#40** ........... $6.95
(1) CHICKEN ENCHILADA WITH GREEN SAUCE, (1) TACO (1) GUACAMOLE TOSTADA DINNER WITH BEANS AND RICE

**#41** ........... $6.95
(3) CHICKEN ENCHILADAS WITH SOUR CREAM, BEANS AND RICE

### CHILDREN DINNER

(1) ENCHILADA ........... $2.95
WITH BEANS AND RICE

(1) BURRITO ........... $2.95
WITH BEANS AND RICE

(1) TOSTADA ........... $2.95
WITH BEANS AND RICE

(1) FLAUTA ........... $2.95
WITH BEANS AND RICE

(1) FAJITA TACO ........... $3.25
WITH BEANS AND RICE

HAMBURGUER AND FRENCH FRIES. $2.95

### SEAFOOD

MOJARRA FRIED ........... $5.50
WITH FRENCH FRIES PICO DE GALLO GUACAMOLE DIP AND (5) FLOUR OR CORN TORTILLAS.

FISH FRIED ........... $5.25
WITH FRENCH FRIES PICO DE GALLO GUACAMOLE DIP AND (5) FLOUR OR CORN TORTILLAS.

SHRIMP SOUP ........... $7.95

FISH SOUP ........... $7.95

SHRIMP RANCHERO ........... $7.95
WITH BEANS, RICE AND GUACAMOLE DIP

SHRIMP A LA DIABLA ........... $7.95
WITH RICE AND BEANS, HOT SAUCE AND GUACAMOLE DIP

SHRIMP AL AJO DE -IO ........... $7.95
WITH RICE AND BEANS AND GUACAMOLE DIP

SHRIMP COCKTAIL ........... $7.95

SEVEN OCEANS COCKTAIL ........... $8.75

SEVEN OCEANS SOUP ........... $8.75

### A LA CARTA

**ADDITIONALS:**

(5) CORN TORTILLAS ........... $1.00
(5) FLOUR TORTILLAS ........... $1.00
(1) GUACAMOLE DIP ........... $1.50
(1)ENCHILADA ........... $2.00
(1)BEEF TACO ........... $2.00
(1) TAMALE ........... $1.50
(1) CHICKEN TACO ........... $2.25
(1) BURRITO ........... $2.25
(1) TOSTADA ........... $2.00
(1) GUACAMOLE TOSTADA ........... $2.50
(1) FLAUTA ........... $2.00
(1) CHEESE TACO ........... $2.00
SOUR CREAM ........... $1.00
(1) SIDE RICE ........... $1.50
(1) SIDE BEANS ........... $1.50
EVERY SUSTITUTION ........... $1.75

### BEVERAGES

SODAS ........... $1.00
COFFE, ICED TEA ........... $0.85
(ONE FREE REFILL)

---

### BREAKFAST

RANCHERO EGGS ........... $5.95
MEXICAN EGGS ........... $5.95
EGGS WITH SAUSAGE ........... $5.95
EGGS WITH HAM ........... $5.95
EGGS WITH BACON ........... $5.95
STEAK AND EGGS ........... $5.95
EGGS AND PORK CHOP ........... $5.95
EGGS WITH MEAT ........... $5.95
EGGS WITH MACHACA ........... $5.95

### LUNCH
(11:00-14:00 HRS MONDAY TO FRIDAY (NO SUSTITUTIONS))

#1 ........... $5.95
MEAT ENCHILADA, MEAT TACO, MEAT AND BEAN TOSTADA.

#2 ........... $5.95
BEAN AND CHEESE BURRITO BEAN AND MEAT TOSTADA MEAT TACO

#3 ........... $5.95
MEAT FLAUTA, BEAN AND CHEESE BURRITO, MEAT TACO.

#4 ........... $5.95
TWO MEAT TACOS, ONE MEAT AND BEAN TOSTADA.

#5 ........... $4.25
(1) BEEF TACO, (1) ENCHILADA, BEANS AND RICE.

#6 ........... $4.25
(1) TOSTADA, (1) TACO RICE AND BEANS

#7 ........... $4.50
(1) BEEF CHILI RELLENO, (1) ENCHILADA, RICE AND BEANS

#8 ........... $4.25
(3) BEEF ENCHILADAS, RICE AND BEANS

#9 ........... $4.25
(1) ENCHILADA, (1) CHEESE TACO RICE AND BEANS

#10 ........... $4.25
(3) MINCED MEAT TACOS, RICE AND BEANS

#11 ........... $4.25
(1) FAJITA TACO, (1) MEAT TACO RICE AND BEANS

#12 ........... $4.50
(1) CHICKEN TACO WITH FLOUR TORTILLA, (1) CHEESE CHILI RELLENO, RICE AND BEANS

#13 ........... $4.25
(1) CHICKEN FLAUTA, (1) MEAT BURRITO, RICE AND BEANS

#14 ........... $4.25
(1)BEEF BURRITO (1)ENCHILADA, RICE AND BEANS

#15 ........... $4.25
(1) GUACAMOLE TOSTADA, (1) CHICKEN TACO WITH CORN TORTILLAS, RICE AND BEANS

#16 ........... $4.25
(1) FAJITA TACO, (1) ENCHILADA, RICE AND BEANS

#17 ........... $4.25
(1) CHEESE ENCHILADA, (1) TOSTADA, RICE AND BEANS

#18 ........... $4.25
(1) BEEF BURRITO, (1) TAMALE, RICE AND BEANS

#19 ........... $4.25
(1) TAMALE, (1) ENCHILADA, RICE AND BEANS

#20 ........... $3.99
(2) TAMALES, RICE AND BEANS

#21 ........... $3.99
(1) TAMALE, (1) TACO RICE AND BEANS

#22 ........... $4.25
(1) TAMALE, (1) TOSTADA, RICE AND BEANS

#23 ........... $4.25
(1) BEEF FLAUTA, (1) BURRITO RICE AND BEANS

### APPETIZERS

NACHOS ........... $5.45
WITH BEAN AND CHEESE

NACHOS ........... $5.45
WITH BEEF AND CHEESE

NACHOS ........... $6.25
WITH BEEF, BEAN AND CHEESE

NACHOS ........... $6.95
WITH BEEF, BEAN, CHEESE, GUACAMOLE DIP AND SOUR CREAM

BOTANA ........... $7.25
3 FLAUTAS, 4 NACHOS, 1 QUESADILLA AND CHEESE DIP

MELTED CHEESE ........... $4.95
WITH BACON

MELTED SAUSAGE ........... $4.95

GUACAMOLE SALAD ........... $4.50

### DINNER

VARGAS SPECIAL ........... $6.95
(1) FLOUR TORTILLAS (DEEP FRIED), MEAT BEANS, LETTUCE, SLICES OF TOMATO AND AVOCADO, AND DIP OF SOUR CREAM

ENCHILADAS SUIZA ........... $6.95
(3) ENCHILADAS MEAT OR CHEESE WITH GRAVY AND SOUR CREAM, LETTUCE AND TACO SAUCE

CHICKEN TACOS ........... $6.95
(3) TACOS FILLED WITH CHICKEN, COVERED WITH SOUR CREAM LETTUCE, TACO SAUCE AND SMALL DIP OF GUACAMOLE.

QUESADILLAS ........... $5.95
ANY MEAL (5) FLOUR TORTILLAS, GRILLED WITH CHEESE, LETTUCE AND SMALL DIP OF GUACAMOLE

CHICKEN FLAUTAS ........... $6.95
(4) DOUBLE TORTILLAS FILLED WITH CHICKEN, COVER WITH SOUR CREM, LETTUCE, TACO SAUCE AND SMALL DIP OF GUACAMOLE

TACOS, ENCHILADAS OR TOSTADAS $6.25
(3) BEEF OR CHEESE TACOS ENCHILADAS OR TOSTADAS

BEEF OR CHICKEN FAJITAS
FOR ONE ........... $8.95
FOR TWO ........... $17.00

DURANGO ........... $6.95
ONE MEAT ONE CHEESE CHILI RELLENO ONE MEAT TACO RICE AND REFRIED BEANS

TIJUANA PLATE ........... $6.95
TWO SOPES, GUACAMOLE SALAD

---

GUADALAJARA ........... $6.95
ONE MEAT FLAUTA, ONE MEAT TACO BEANS AND CHEESE BURRITO ONE MEAT AND BEAN TOSTADA, SMALL DIP OF GUACAMOLE.

SONORA ........... $6.95
ONE MEAT, ONE CHEESE ENCHILADA, ONE MEAT TACO, RICE AND REFRIED BEANS.

TAMPICO ........... $6.95
ONE MEAT AND BEAN SOPE, ONE MEAT BURRITO ONE MEAT FLAUTA, ONE MEAT AND BEAN TOSTADA, SMALL DIP OF GUACAMOLE

CHIHUAHUA ........... $6.95
GRILLED STEAK, FRENCH FRIES PICO DE GALLO, GUACAMOLE DIP, BEANS, (3) FLOUR TORTILLAS OR CORN TORTILLAS

MENUDO (TRIPE) ........... $4.95

MEXICAN DINNER ........... $6.25
(1) TOSTADA, (1) ENCHILADA, (1) MEAT TACO, BEANS

DON LIBRA ........... $6.95
(1) BEEF ENCHILADA, (1) TACO, (1) BURRITO BEANS AND RICE

FIESTA PLATE ........... $5.95
(1) ENCHILADA, (1) CHEESE TACO, (1) MEAT TACO, WITH RICE AND BEANS

TAMALE PLATE ........... $5.95
(4) TAMALES WITH RICE AND BEANS

(3) BEEF OR CHEESE ENCHILADAS. $6.95
WITH BEANS AND RICE

JAIRITOS PLATE ........... $6.45
(1) MEAT TACO, (1) GUACAMOLE TOSTADA, (1) ENCHILADA, WITH BEANS AND RICE

MEXICAN PLATE ........... $6.95
(2) SOPES WITH FAJITA MEAT BEANS AND RICE

JUANITA'S PLATE ........... $5.95
(1) DELUXE TOSTADA, BEEF OR CHICKEN WITH GUACAMOLE AND SOUR CREAM

SPECIAL MEXICAN DINNER ........... $6.95
(2)ENCHILADAS, (1) TAMAL, (1) GUACAMOLE TOSTADA, WITH RICE AND BEANS.

TACOS AL CARBON ........... $6.95
(2) TACOS WITH FAJITA MEAT, WITH BEANS AND RICE

GRILLED CHICKEN BREAST W/ BEANS, RICE, AND GUACAMOLE ........... $6.95

TAMPIQUEÑA ........... $6.95
GRILLED BEEF FILET (1) ENCHILADA RANCHERA WITH BEANS AND RICE.

MEXICAN STEAK ........... $6.95
GRILLED CHOPPED STEAK WITH BEANS AND RICE

FAJITA NACHOS ........... $6.95
CHIPS COVERED WITH FAJITA MEAT CHEESE, GUACAMOLE AND SOUR CREME.

CHIMICHANGA ........... $6.95
BEEF OR CHICKEN WITH BEANS AND RICE, GUACAMOLE AND SOUR CREME

BEEF SOUP ........... $5.25

BIRDERA ........... $6.95
(1) BEEF ENCHILADA WITH GREEN SAUCE, (1) CHEESE ENCHILADA WITH RED SAUCE, (1) CHICKEN ENCHILADA WITH SOUR CREAM, BEANS AND RICE

CHELITA ........... $6.95
(1) ENCHILADA, (1) CHICKEN ENCHILADA WITH SOUR CREAM, (1) TACO, BEANS AND RICE

---

LUISITA ........... $6.95
(1) BIG CHICKEN BURRITO WITH SOUR CREAM, GUACAMOLE, DIP, BEANS AND RICE.

DON PRUDE ........... $6.95
(1) ENCHILADA, (1) CHICKEN TACO WITH FLOUR TORTILLA, (1) TOSTADA, BEANS AND RICE.

DON LATO ........... $6.95
(1) CHICKEN ENCHILADA WITH CREAM, (1) CHICKEN FLAUTA, (1) CHEESE CHILI RELLENO, BEANS AND RICE

(3) GREEN ENCHILADAS ........... $6.95
WITH TOMATILLO SAUCE, BEANS AND RICE

SMOTHERED BEEF BURRITO ........... $5.95
WITH RED SAUCE, SOUR CREAM, BEANS AND RICE

SMOTHERED CHIMICHANGA ........... $6.95
WITH BEEF OR CHICKEN, SOUR CREAM, GUACAMOLE DIP AND TOMATO SLICES.

TOSTADA DELUXE ........... $6.95
WITH CHICKEN FAJITA, SOUR CREAM, GUACAMOLE DIP AND TOMATO SLICES.

ENCHILADAS POBLANAS ........... $6.95
(3) CHICKEN ENCHILADAS WITH MOLE, SOUR CREAM, BEANS AND RICE.

TACO DELUXE ........... $5.95
WITH SOUR CREAM, BEANS AND RICE,

TACO SALAD ........... $6.95
WITH GUACAMOLE DIP SOUR CREAM, BEANS AND RICE

ANITAS ........... $6.95
(2) ENCHILADAS (1) CHEESE TACO BEANS AND RICE.

PAZ ........... $6.95
(1) CHEESE CHILI RELLENO (1) CHEESE TACO (1) CHICKEN TACO WITH CORN TORTILLA, BEANS GUACAMOLE DIP AND RICE

SAN LUIS DINNER ........... $6.95
(3) GORDITAS, BEANS GUACAMOLE DIP AND RICE

BARBACOA ........... $6.95
PLATE, (3) TACOS OR (2) BURRITOS, BEANS AND RICE

RED CHILI PORK ........... $6.95
PLATE, (3) TACOS OR (2) BURRITOS BEANS AND RICE

BEEF WITH GREEN CHILI ........... $6.95
PLATE, (3) TACOS OR (2) BURRITOS, BEANS AND RICE

BEEF GUISADO ........... $6.95
PLATE, (3) TACOS OR (2) BURRITOS BEANS AND RICE

(3) MEAT TACOS ........... $6.95
WITH BEANS AND RICE

MOLE ........... $6.95
WITH CHICKEN BREAST OR LEG,BEANS AND RICE

MEXICAN'S CHICKEN ........... $7.95
(1) CHICKEN BREAST WITH (4) SHRIMPS AND RICE

ALAMBRES ........... $7.95
BEEF WITH BACON AND CHEESE, GUACAMOLE DIP, BEANS AND RICE.

(3) PORK CHOPS ........... $6.95
WITH RED CHILI BEANS AND RICE

---

EXHIBIT E

DEPOSITION EXHIBIT 7

Bienvenidos a
La Hacienda Restaurant

Specializing in Authentic
south of the border food.

405 S. Kansas
Liberal, Kansas
316 626-5990

## APPETIZERS

NACHOS................................$4.25
with Beans and Rice

NACHOS................................$4.25
with Beef and Cheese

NACHOS................................$4.25
with Beef, Beans, Cheese, Guacmole dulp and Sour Cream

CHEESE DIP............................$3.00

GUACAMOLE SALAD......................$4.50

## DINNER

HACIENDA SPECIAL......................$6.95
(3) FLOUR TORTILLAS (BEEF FRIED), MEAT,BEANS,
LETTUCE, SLICES OF TOMATO AND AVOCADO, AND
DIP OF SOUR CREAM.

ENCHILADAS SUIZA'S...................$6.95
(3) ENCHILADAS MEAT, CHEESE, OR CHICKEN, WITH
GRAVY AND SOUR CREAM, LETTUCE AND TACO SAUCE.

CHICKEN TACOS........................$6.95
(3) TACOS FILLED WITH CHICKEN, COVERED WITH
SOUR CREAM, LETTUCE, TACO SAUCE AND SMALL
DIP OF GUACAMOLE.

QUESADILLAS..........................$5.95
ANY MEAL (3) FLOUR TORTILLAS, GRILLED WITH CHEESE,
LETTUCE AND SMALL DIP OF GUACAMOLE.

QUESADILLAS..........................$6.95
MEAT, CHICKEN, OR FAJITAS WITH GUACAMOLE,SOUR
CREAM, AND BEANS AND RICE.

## LA HACIENDA #1

CHICKEN FLAUTAS......................$6.95
(3) DOUBLE TORTILLAS FILLED WITH CHICKEN, COVER
WITH SOUR CREAM, LETTUCE, TACO SAUCE AND SMALL
DIP OF GUACAMOLE.
TACOS, ENCHILADAS, OR TOSTADAS......$6.25
(3) BEEF OR CHEESE TACOS, ENCHILADAS OR TOSTADAS.
BEEF OR CHICKEN FAJITAS
FOR ONE.............................$11.95
FOR TWO.............................$17.00

DURANGO.............................$6.95
ONE MEAT, ONE CHEESE CHILI RELLENO, ONE
MEAT TACO, RICE AND BEANS.
TIJUANA PLATE.......................$6.95
TWO SOPES, GUACAMOLE SALAD
GUADALAJARA.........................$6.95
ONE MEAT FLAUTA, ONE MEAT TACO, BEANS AND
CHEESE BURRITO, ONE MEAT AND BEAN TOSTADA,
SMALL DIP OF GUACAMOLE.
SONORA..............................$6.95
ONE MEAT, ONE CHEESE ENCHILADA, ONE MEAT
TACO, RICE AND BEANS.
TAMPICO.............................$6.95
ONE MEAT AND BEAN SOPE, ONE MEAT BURRITO,
ONE MEAT FLAUTA, ONE MEAT AND BEAN TOSTADA.
SMALL DIP OF GUACAMOLE.
CHIHUAHUA...........................$8.95
GRILLED STEAK, FRENCH FRIES, PICO DE GALLO,
GUACAMOLE DIP, BEANS, (3) CORN OR FLOUR TORTILLAS.
SMOTHERED BEEF BURRITO..............$6.95
WITH RED SAUCE, SOUR CREAM, BEANS AND RICE.
CHIMICHANGAS........................$6.95
BEEF OR CHICKEN WITH BEANS AND RICE, GUACAMOLE
AND SOUR CREAM
FAJITAS NACHOS......................$6.95
CHIPS COVERED WITH FAJITA MEAT CHEESE, GUACAMOLE
AND SOUR CREAM.
TAMPIQUENA..........................$6.95
GRILLED BEEF FILLET, (3) ENCHILADA RANCHERA WITH
BEANS AND RICE.
TACOS AL CARBON.....................$6.95
(3) TACOS WITH FAJITA MEAT, WITH BEANS AND RICE.

TACO'.. . JUICE......................$5.95
WITH SOUR CREAM, GUACAMOLE DIP, AND BEANS AND RICE.
TACO SALAD..........................$6.95
WITH GUACAMOLE DIP, SOUR CREAM, BEANS AND RICE.
3) BEEF OR CHEESE ENCHILADAS.......$6.95
WITH BEANS AND RICE.
MEXICAN PLATE.......................$6.95
2) SOPES WITH FAJITA MEAT, WITH BEANS AND RICE.
3) MEAT TACOS.......................$6.95
WITH BEANS AND RICE.
GRILLED CHICKEN BREAST W/BEANS, RICE,
AND GUACAMOLE......................$6.95
MEXICAN DINNER.....................$6.95
3) ENCHILADAS, (1) GUACAMOLE TOSTADA, (1) TAMALE
WITH BEANS AND RICE.
SMOTHERED CHIMICHANGA..............$6.95
BEEF OR CHICKEN, SMOTHERED IN RED SAUCE, SOUR
CREAM, GUACAMOLE DIP, WITH BEANS AND RICE.
COMBINED FAJITAS
WITH BEEF, CHICKEN, AND SHRIMP.
FOR ONE.............................$9.95
FOR TWO.............................$17.00
DON PANCHO..........................$6.95
ONE BURRITO, ONE ENCHILADA, ONE TACO, WITH
BEANS AND RICE.
RODEO PLATE.........................$5.95
ONE ENCHILADA, ONE TACO, ONE FLOUR TACO,
WITH BEANS AND RICE.
TAMALE PLATE........................$5.95
(3) TAMALES WITH BEANS AND RICE.
LAYITO'S PLATE......................$5.95
ONE TACO, ONE GUACAMOLE TOSTADA, ONE ENCHILADA
WITH BEANS AND RICE.
TOSTADA DELUXE......................$5.95
BEEF OR CHICKEN TOSTADA, WITH GUACAMOLE AND
SOUR CREAM.
MONTERRY'S PLATE....................$6.95
(3) BEEF ENCHILADAS, WITH GREEN SAUCE, (1) CHEESE
ENCHILADA WITH RED SAUCE, (1) CHICKEN TACO, WITH
SOUR CREAM, BEANS AND RICE.
SALTILLO PLATE......................$6.95
ONE CHICKEN FLAUTA, ONE CHILI RELLENO, ONE
CHICKEN ENCHILADA, WITH SOUR CREAM, BEANS AND RICE.

...CIAS PLATE.......................$6.95
E BIG CHICKEN BURRITO WITH SOUR CREAM,
IN BEANS AND RICE,GUACAMOLE DIP, BEANS AND RICE.

7 One Taco, One Enchilada, One Tostada
One Guacamole Dip with Beans and Rice...$6.95

8 One Meat Flauta, One Chicken Tostada, One
Taco, One Burrito with Beans and Rice...$6.95

9 One Chicken Taco, One Enchilada, One
Flauta with Beans and Rice...............$6.95

10 One Chicken Enchilada, One Tostada, One flour
Taco, One Dip of Sour Cream,
with Beans and Rice......................$6.95

11 One Tostada, One Chicken Taco, One Enchilada
with Beans and Rice......................$6.95

12 One Taco, Two Chicken Enchiladas with Sour
Cream, with Beans and Rice...............$6.95

13 One Taco, One Chicken Enchilada with Green
Sauce, One Tostada with Beans and Rice...$6.95

14 Three Chicken Enchiladas with Sour Cream
with Beans and Rice......................$6.95

## SEAFOOD

MOJARRA FRIED.......................$8.50
WITH FRENCH FRIES, PICO DE GALLO, GUACAMOLE DIP
AND THREE FLOUR OR CORN TORTILLAS.

FRIED FISH..........................$8.25
WITH FRENCH FRIES, PICO DE GALLO, GUACAMOLE DIP,
AND THREE FLOUR OR CORN TORTILLAS.
SHRIMP SOUP.........................$8.25
FISH SOUP...........................$8.25
RANCHERO SHRIMP.....................$8.25
WITH BEANS, RICE, AND GUACAMOLE DIP.
SHRIMP A LA DIABLA..................$8.25

## CHILDREN DINNER
(1) ENCHILADA.......................$2.95
WITH BEANS AND RICE.

(1) BURRITO.........................$2.95
WITH BEANS AND RICE.

(1) TOSTADA.........................$2.95
WITH BEANS AND RICE.

(1) FLAUTA..........................$2.95
WITH BEANS AND RICE.

HAMBURGER AND FRIES.................$2.95

FOR CHILDREN 12 AND UNDER

SHRIMP AL MOJO DE
AJO................................$8.25
WITH RICE AND BEANS
AND GUACAMOLE DIP.
SHRIMP WITH RICE....................$8.25
WITH LETTUCE, GUACAMOLE, BEANS
AND RICE.

## COMBINATION PLATES

1 Meat Enchilada, Meat Taco, Meat and
and Bean tostada....................$5.95

2 Bean and Cheese Burrito, Bean and Meat
Tostada, One Meat Taco..............$5.95

3 Meat Flauta, Bean and Cheese Burrito,
Meat Taco...........................$5.95

4 Two Meat Tacos, One Meat and Bean
Tostada.............................$5.95

5 One Enchilada, one taco, with Beans
and Rice............................$4.25

6 One Taco, One Tostada, with Beans
and Rice............................$4.25

7 One Enchilada, One Chili Relleno, with
Beans and Rice......................$4.50

8 Two Enchiladas with Beans and
Rice................................$4.25

9 One Minced taco, one tostada with
Beans and Rice......................$4.25

10 One Meat Taco, One Fajita Taco,
with Beans and Rice.................$4.25

11 One Chicken Taco, One Chili Relleno
with Beans and Rice.................$5.95

12 One Burrito, One Chicken Flauta, with
Beans and Rice......................$4.25

13 One Enchilada, One Burrito, with
Beans and Rice......................$4.25

14 One Chicken Taco, One Guacmole
Tostada, with Beans and Rice........$4.25

15 One Enchilada, One Fajita Taco,
with Beans and Rice.................$4.25

16 One Tostada, One Enchilada, with
Beans and Rice......................$4.25

17 One Tamale, One Burrito, with
Beans and Rice......................$4.25

18 One Enchilada, One Tamale with
Beans and Rice......................$4.25

19 One Taco, One Tamale, with
Beans and Rice......................$3.75

20 One Tostada, One Tamale, with
Beans and Rice......................$3.75

21 Two Tamales with Beans and
Rice................................$4.25

22 One Burrito, One Beef Flauta,
with Beans and Rice.................$4.25

23 One Taco, Two Enchiladas
with Beans and Rice.................$5.95

24 One Enchilada, Two Tacos
with Beans and Rice.................$4.50

25 One Chili Relleno, One Tamale
One Enchilada with Beans and Rice $6.

26 One Enchilada, Two Chili Rellenos
with Beans and Rice.................$6.95

## A LA CARTA

ADDITIONALS:

CORN TORTILLAS......................$1.00
FLOUR TORTILLAS.....................$1.00
GUACAMOLE DIP.......................$1.00
ENCHILADA...........................$2.00
BEEF TACO...........................$2.00
CHICKEN TACO........................$2.00
TAMALE..............................$1.50
BURRITO.............................$2.00
TOSTADA.............................$2.00
GUACAMOLE TOSTADA...................$2.00
FLAUTA..............................$2.00
SOUR CREAM..........................$1.00
SIDE RICE...........................$1.50
SIDE BEANS..........................$1.50
FRY SUBSTITUTION....................$0.75

## BEVERAGES

SODAS...............................$1.00
COFFEE, ICED TEA....................$1.00

## ALCOHOLIC BEVERAGES

MARGARITAS..........................$3.50
BEER................................$2.25

# ≈ Bienvenidos a ≈
# La Hacienda Restaurant

**Specializing in Authentic south of the border food.**

EXHIBIT G

DEPOSITION EXHIBIT 4A

405 S. Kansas • Liberal, Kansas • 316-626-5990

## LA HACIENDA #2

### ~ SEAFOOD ~

MOJARRA FRIED .......................... $9.50
FRIED FISH .......................... $8.50
SHRIMP SOUP .......................... $8.50
FISH SOUP .......................... $8.50
RANCHERO SHRIMP .......................... $8.50
SHRIMP A LA DIABLA .......................... $8.50
SHRIMP AL MOJO DE AJO .......................... $8.50
SHRIMP WITH RICE .......................... $8.50
SHISK-A-BAB .......................... $9.95
SHRIMP COCKTAIL .......................... $8.25
CAMARONES RELLENOS .......................... $9.95
CAMPECHANA COCKTAIL .......................... 8.95
VUELVE A LA VIDA CALDO .......................... 8.95
CAMARON JESSI .......................... 8.25
CAMARON EMPANIZADO .......................... 8.25
BROCHETAS CAMARON .......................... 8.75
CAMARON A LA MANTEQUILLA .......................... 8.25
TACOS DE ALAMBRE .......................... 8.25

### ~ CHILDREN DINNER ~

(1) ENCHILADA .......................... $2.95
(1) BURRITO .......................... $2.95
(1) TOSTADA .......................... $2.95
(1) FLAUTA .......................... $2.95
(1) TACO .......................... $2.95
HAMBURGER AND FRIES .......................... $2.95

FOR CHILDREN 12 AND UNDER

### ~ A LA CARTA ~

ADDITIONALS:
(3) CORN TORTILLAS .......................... $1.00
(3) FLOUR TORTILLAS .......................... $1.00
(1) GUACAMOLE DIP .......................... $1.00
(1) ENCHILADA .......................... $2.00
(1) BEEF TACO .......................... $2.00
(1) CHICKEN TACO .......................... $2.00
(1) TAMALE .......................... $1.50
(1) BURRITO .......................... $2.00
(1) TOSTADA .......................... $2.00
(1) GUACAMOLE TOSTADA .......................... $2.00
(1) FLAUTA .......................... $2.00
(1) RELLENO .......................... $2.00
SOUR CREAM .......................... $1.00
(1) SIDE RICE .......................... $1.50
(1) SIDE BEANS .......................... $1.50
EVERY SUBSTITUTION .......................... $.75

### ~ DESSERT ~

SOPAPILLA DELIGHT .......................... $3.50

### ~ BEVERAGES ~

SODAS .......................... $1.00
COFFEE, ICE TEA .......................... $1.00

### ~ ALCOHOLIC BEVERAGES ~

MARGARITAS .......................... $3.50
BEER .......................... $2.25
IMPORTS .......................... $3.00

## ~ APPETIZERS ~

NACHOS .......................... $4.50
NACHOS .......................... $4.50
NACHOS SUPREME .......................... $4.50
CHEESE DIP .......................... $3.50
GUACAMOLE SALAD .......................... $4.50

## ~ DINNER ~

HACIENDA SPECIAL .......................... $6.95
ENCHILADAS SUPREMES .......................... $6.95
CHICKEN TACOS .......................... $6.95
QUESADILLAS .......................... $5.95
QUESADILLAS .......................... $5.95
CHICKEN FLAUTAS .......................... $6.95
TACOS, ENCHILADAS, OR TOSTADAS .......................... $6.95
BEEF OR CHICKEN FAJITAS
FOR ONE .......................... $8.95
FOR TWO .......................... $17.00
ZACATECAS .......................... $6.95
MEXICALI PLATE .......................... $6.95
COLIMA .......................... $6.95
SINALOA .......................... $6.95
TAMAULIPOS .......................... $6.95
TOSTADA DELUXE .......................... $5.95
STEAK A LA PARILLA .......................... $8.95
SMOTHERED BEEF BURRITO .......................... $6.95
CHIMICHANGAS .......................... $6.95
FAJITAS NACHOS .......................... $6.95

OAXAKUEMA .......................... $6.95
TACOS AL CARBON .......................... $7.50
TACO DELUXE .......................... $5.95
TACO SALAD .......................... $6.95
(3) BEEF OR CHEESE ENCHILADAS .......................... $6.95
PALLISCADAS PLATE .......................... $6.95
(3) MEAT TACOS .......................... $6.95
TACOS AL PASTOR .......................... $7.50
MEXICAN DINNER .......................... $6.95
SMOTHERED CHIMICHANGA .......................... $6.95
COMBINED FAJITAS
FOR ONE .......................... $9.95
FOR TWO .......................... $17.00
DON PANCHO .......................... $6.95
RODEO PLATE .......................... $5.95
TAMALE PLATE .......................... $5.95
LAYITO'S PLATE .......................... $5.95
TOSTADA DELUXE .......................... $5.95
MONTERRY'S PLATE .......................... $6.95
SALTILLO PLATE .......................... $6.95
DELICIAS PLATE .......................... $6.95

## ~ COMBINATION PLATES ~

#1 ONE MINCED TACO, ONE TOSTADA WITH BEANS AND RICE .......................... $4.25
#2 ONE MEAT TACO ONE FAJITA TACO WITH BEANS AND RICE .......................... $4.25
#3 ONE CHICKEN TACO, ONE CHILI RELLENO WITH BEANS AND RICE .......................... $3.95
#4 ONE BURRITO, ONE CHICKEN FLAUTA, WITH BEANS AND RICE .......................... $4.25
#5 ONE ENCHILADA, ONE BURRITO, WITH BEANS AND RICE .......................... $4.25
#6 ONE CHICKEN TACO ONE GUACAMOLE TOSTADA WITH BEANS AND RICE .......................... $4.25
#7 ONE ENCHILADA, ONE FAJITA TACO WITH BEANS AND RICE .......................... $4.25
#8 ONE TOSTADA, ONE ENCHILADA, WITH BEANS AND RICE .......................... $4.25
#9 ONE TAMALE, ONE BURRITO, WITH BEANS AND RICE .......................... $4.25
#10 ONE ENCHILADA, ONE TAMALE WITH BEANS AND RICE .......................... $4.25
#11 ONE TACO ONE TAMALE, WITH BEANS AND RICE .......................... $3.75
#12 ONE TOSTADA, ONE TAMALE WITH BEANS AND RICE .......................... $3.75
#13 TWO TAMALES WITH BEANS AND RICE .......................... $4.25
#14 ONE BURRITO, ONE BEEF FLAUTA, WITH BEANS AND RICE .......................... $4.25

#15 ONE TACO, TWO ENCHILADAS WITH BEANS AND RICE .......................... $3.95
#16 ONE ENCHILADA, TWO TACOS WITH BEANS AND RICE .......................... $4.50
#17 ONE CHILI RELLENO ONE TOSTADA ONE ENCHILADA WITH BEANS AND RICE .......................... $6.95
#18 ONE ENCHILADA, TWO CHILI RELLENOS WITH BEANS AND RICE .......................... $6.95
#19 ONE TACO, ONE ENCHILADA, ONE TOSTADA ONE GUACAMOLE DIP WITH BEANS AND RICE .......................... $6.95
#20 ONE MEAT FLAUTA, ONE CHICKEN TOSTADA, ONE TACO, ONE BURRITO WITH BEANS AND RICE .......................... $6.95
#21 ONE CHICKEN TACO, ONE ENCHILADA, ONE FLAUTA WITH BEANS AND RICE .......................... $6.95
#22 ONE CHICKEN FANCHILADA, ONE TOSTADA, ONE FLAUR TACO ONE DIP OF SOUR CREAM, WITH BEANS AND RICE .......................... $6.95
#23 ONE TOSTADA, ONE CHICKEN TACO, ONE ENCHILADA WITH BEANS AND RICE .......................... $6.95
#24 ONE TACO TWO CHICKEN ENCHILADAS WITH SOUR CREAM WITH BEANS AND RICE .......................... $6.95
#25 ONE TACO, ONE CHICKEN ENCHILADA WITH CREAM SAUCE, ONE TOSTADA WITH BEANS AND RICE .......................... $6.95
#26 THREE CHICKEN ENCHILADAS WITH SOUR CREAM WITH BEANS AND RICE .......................... $6.95
#27 MEAT ENCHILADA, MEAT TACO, MEAT AND BEAN TOSTADA .......................... $5.95
#28 BEAN AND CHEESE BURRITO, BEAN AND MEAT TOSTADA, ONE MEAT TACO .......................... $5.95

LA HACIENDA #3